■ In the Matter of MARY BRYANT, Petitioner, v JOSEPH D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Commissioner of Social Services, dated July 17, 1978 and made after a statutory fair hearing, which affirmed a determination of the local agency to discontinue and thereafter refuse to provide petitioner with certain shelter allowances. Petition granted to the extent that the determination is annulled, on the law, without costs or disbursements, and matter remitted to the respondent county commissioner for further proceedings in accordance herewith. In April, 1970 petitioner and her husband purchased a home, giving a mortgage which was assigned to a bank in late 1970. Payments on the mortgage were current through October, 1972. Sometime thereafter, petitioner and her husband separated. Petitioner remained in the marital home and, in August, 1973, began to receive aid to dependent children on behalf of herself and her three minor children through the Nassau County Department of Social Services (hereinafter the department). Between August and the end of November, 1973, the department paid to the mortgagee bank a total of $3,553.26, which served to pay the existing mortgage arrears, thus bringing the mortgage payments current through November, 1973. Implicit in the department's discretionary determination to pay petitioner's mortgage arrears was its conclusion that conservation of petitioner's interest in her home was preferable to liquidation of that interest, in light of all relevant factors. (See 18 NYCRR 352.27 [b].) For the months of December, 1973 through May, 1974, the department included in the amount of assistance to be received by petitioner a shelter allowance in the amount of $239, pursuant to 18 NYCRR 352.4 (b) and (c). Payments of this amount were to be made by the department directly to the mortgagee bank upon the bank's return to the department of vouchers provided to the bank by the department. Petitioner claims that the monthly payments for December, 1973 through May, 1974 were not made by the department. The department, conceding its obligation to have made such payments, claims that the payments were made. It is undisputed that the department made the payments that it was obligated to make for the months of June through August and October and November, 1974. However, the department's vouchers for September and December, 1974 were apparently not returned by the bank for payment. Thus, the department made no payments to the bank for those months. As of August, 1974, petitioner's shelter allowance had increased to $270 per month. Coincidentally, petitioner's mortgage payments had also increased at about that time to $353.09 per month. The department paid $270 to the bank for the month of January, 1975. However, the department inexplicably failed to authorize or issue vouchers for February and March, 1975. In April, 1975 the department, for reasons that are not entirely clear from the record, began to pay petitioner's shelter allowance to her, with the understanding that she would forward the amount of the allowance to the bank. Thus, the allowances for April, May and June, 1975 were paid to petitioner who, in turn, paid them to the bank. In July, 1975 the department failed, again inexplicably, to issue a shelter allowance to petitioner. Although the August, 1975 allowance was paid to petitioner, when she mailed her check in the amount of $270 to the bank, the bank returned it, accompanied by a letter stating that the check was being returned "due to the fact that the Welfare Department has stopped making payments on this case." That letter also stated that the

bank had "requested from the Department of Social Services if they are to continue to make payments but no reply has been received." In reaction to this letter, petitioner made no further payments to the bank, although she thereafter received monthly shelter allowances from the department, in the amount of $270 each, for the months of September, October, November and December, 1975. On October 16, 1975 petitioner requested a fair hearing to review the department's failure to issue shelter allowances. In response to statements in the department's "fair hearing summary", dated November 28, 1975 and prepared in reply to that request, that payments had not been issued by the department for September and December, 1974 and February, March and July, 1975, and that the department was "in the process of clearing this matter up with the bank", petitioner withdrew her request for a fair hearing. However, notwithstanding these statements, after December, 1975 the department issued no further shelter allowances to petitioner and made no further payments to the bank toward petitioner's mortgage obligation. In December, 1975 petitioner returned to the department the shelter allowances she had retained after the bank's rejection of her August, 1975 payment, less $350 thereof which she had paid to the gas company to prevent the gas supply to her residence from being shut off. In May, 1976 petitioner's attorneys wrote to an employee of the department's fair hearing section, citing the statements in the November 28, 1975 fair hearing summary which had been relied on by petitioner, and stating that petitioner had "been unable to find out the status of her mortgage payments", and asking: "Has the matter been cleared up?" Apparently no response was received to this letter. In September, 1976 a foreclosure action was commenced against petitioner, which action has been pending throughout the pendency of this article 78 proceeding. In May, 1977 petitioner submitted a request for a fair hearing, which was thereafter held in July, 1977. That hearing resulted in a determination by the respondent State commissioner upholding the department's actions. However, when petitioner commenced a CPLR article 78 proceeding to challenge that determination, it was discovered that, because of a computer error, the transcript of the fair hearing was no longer in existence. Accordingly, pursuant to court order a second fair hearing was held in July, 1978. At the hearing, petitioner took the position that she was not requesting a discretionary grant to pay her mortgage arrears, since she was seeking neither to have the department duplicate payments it had made previously nor to have the department make payments toward the mortgage arrears which were due for months in which the department had no obligation to make such payments. Instead, it was petitioner's position that she was entitled to receive the shelter allowances which the department had allegedly failed to pay, although concededly obligated to do so, for 11 months in the period from December, 1973 through December, 1975. Petitioner contended, in addition, that the department had improperly failed to continue to pay shelter allowances to her after December, 1975. At the hearing the department presented no witnesses who had knowledge of the facts of petitioner's case. Instead, its case consisted entirely of documentary evidence and interpretations of that evidence by the department's attorney, who had no personal knowledge of the facts stated therein. The petitioner testified at the hearing. In addition, her attorney testified to matters that were within his personal knowledge as a result of his having dealt with the mortgagee bank in his capacity as petitioner's counsel in the foreclosure action. By "Decision After Fair Hearing" dated July 17, 1978, the State commissioner affirmed the determination of the department. The commissioner found that on December 12,

1975 the agency had determined to discontinue petitioner's shelter allowances because she "had not utilized her shelter allowances to meet her mortgage payments and such payments were in arrears." It was further found that the mortgagee bank had rejected petitioner's mortgage payments for August through December, 1975 "because of the existing arrears". With respect to petitioner's attorney's statements at the hearing, based on his discussions with the mortgagee bank, to the effect that the bank would discontinue its foreclosure action if all but approximately $1,134 of the arrears were paid and that almost that much of the arrears could be paid if the department made all the retroactive payments it was required to make, the commissioner found that petitioner had not established how the balance would be met. Moreover, the commissioner determined that petitioner would be entitled, if at all, to arrears only from May, 1976 onward, pursuant to the time limitation of 18 NYCRR 352.31 (e), and that the amount of such arrears would not be sufficient to avoid foreclosure. The commissioner also determined that the department had properly considered "all applicable factors" contained in 18 NYCRR 352.27 (b) in deciding not to take action after December, 1975 to conserve petitioner's residence. Petitioner's proceeding pursuant to CPLR article 78 to review the determination of the State commissioner, dated July 17, 1978, was transferred to this court for determination, pursuant to CPLR 7804 (subd [g]). We annul the determination. Contrary to the commissioner's finding, the reason for the department's discontinuance of petitioner's receipt of a shelter allowance as of December, 1975 was not in part that the mortgage was in arrears. The sole reason, as stated in the notice of discontinuance prepared by the department, was that petitioner was "not making mortgage payments" at that time. Since petitioner had not made mortgage payments solely because of the refusal of the bank to accept them and since the bank had apparently refused to accept payments because, in its view, the department had "stopped making payments on [petitioner's] case", it was arbitrary and capricious for the department to have penalized petitioner for her failure to make mortgage payments. Moreover, we note that even if it might have been proper to discontinue petitioner's shelter allowances for her failure to make mortgage payments, no reduction in benefits could have been made without a finding that petitioner's minor children did not require the assistance to which they were entitled. (See *Matter of Springs v Blum*, 74 AD2d 925.) There is nothing in the record to suggest that such a finding was made. Further, even if the department did discontinue petitioner's shelter allowance for the partial reason that her mortgage is in arrears, we have held that the mere facts that a mortgage is in arrears and that a mortgagee has, therefore, refused to accept further mortgage payments, are not sufficient to justify the discontinuance of shelter allowances to a recipient-mortgagor. *(Matter of Prince v D'Elia*, Supreme Ct, Nassau County, April 25, 1978, Altimari, J., affd 65 AD2d 773, on opn at Special Term.) Although the respondent county commissioner asserted in his answer that the petitioner should be barred under former section 135-a of the Social Services Law from challenging the propriety of the December, 1975 discontinuance, since she did not request a fair hearing until May, 1977, petitioner's testimony at the hearing that she never received the required notice of the discontinuance, with its accompanying notice of her right to a fair hearing, was not overcome by contrary evidence since there was no evidence that the discontinuance notice was properly posted and mailed to her. (See *Thomas v Government Employees Ins. Co.*, 61 AD2d 1044; *Matter of Ware v Shang*, 73 AD2d 970.) Accordingly, the limitations period never began to run with respect to the December,

1975 determination to discontinue petitioner's shelter grant. (See *Winters v Commissioner of N. Y. State Dept. of Social Servs.,* 49 AD2d 843; *Matter of Ware v Shang, supra.)* Assuming, without deciding, that it was within the department's discretion, within the guidelines contained in 18 NYCRR 352.27 (b), to decide whether to continue petitioner's grant of a shelter allowance for the period after December, 1975, notwithstanding that the stated basis for its discontinuance of petitioner's shelter allowance in that month was improper, there was not substantial evidence adduced at the fair hearing to support the State commissioner's determination that that discretion was properly exercised based on "all applicable factors". Subdivision (b) of 18 NYCRR 352.27 provides: "A decision as to conservation, assignment or liquidation of non-income-producing property which is used as the client's home shall be based upon a consideration of the cost of carrying charges as compared with rental; marketability; the amount of client equity in the property; the client's age, health and social situation, including the probable duration of dependency and the extent to which his social and economic rehabilitation or that of his dependent household are affected by conservation or liquidation of the property." The only evidence of the department's consideration of these factors that appears in the record is the department's attorney's references to documents, which do not appear in the record, but which apparently reflect the department's conclusion that, as of June, 1976, petitioner's mortgage was in substantial arrears and that petitioner's monthly mortgage payments were in excess of the maximum monthly shelter allowance to which she was entitled. There is no evidence in the fair hearing record that the department took into account the cost of carrying charges as compared with rental costs, the marketability of petitioner's residence, the amount of her equity in the property, her age, health and social situation, and the other factors required to be considered under 18 NYCRR 352.27 (b). Moreover, under the facts of this case, we believe that the department was required, by its obligation not to act in an arbitrary or capricious manner, to consider not only that petitioner's mortgage was in arrears, but also that its failure to pay the shelter allowances to which petitioner was entitled substantially contributed to that situation. In addition, the agency's substantial reliance on the disparity between the amounts of petitioner's monthly mortgage payments and the maximum shelter allowance to which she was entitled under applicable regulations is open to serious question. At the time the department discontinued petitioner's shelter allowance, the difference between petitioner's monthly mortgage payment and monthly allowance was $6.20, whereas that difference had been substantially more at the time the department initially decided to issue petitioner a shelter allowance to be paid toward her mortgage. Furthermore, as of June, 1976, it appears that petitioner's household increased to a household of six for certain budgeting purposes. Accordingly, from that time until at least the time this proceeding was commenced, petitioner would have been entitled to receive a shelter allowance in the full amount of her mortgage payments, $276.20 per month. The commissioner's reliance on petitioner's inability to establish how she would pay the balance of the mortgage arrears that would remain if retroactive payments to petitioner were made was also misplaced. Petitioner's attorney established that the bank would discontinue its foreclosure action if only that balance remained. In the circumstances of this case, the mere fact that payments toward mortgage arrears would not have brought the mortgage payments current was not sufficient to justify the department's refusal to make such payments where the making thereof would have forestalled foreclosure and given

petitioner the opportunity to catch up on her arrears. (See *Matter of Prince v D'Elia, supra;* see, also, *Matter of Jackson v Shang,* 65 AD2d 555.) We note in this regard that, as of the date of the fair hearing, the foreclosure action had been pending for almost two years, with no payments having been made to the mortgagee for more than three years. In light of this evidence of the mortgagee bank's willingness to forbear from foreclosure, we cannot say that such an opportunity would have been fruitless. In this regard, we reject the commissioner's conclusion that 18 NYCRR 352.31 (e) limits the retroactive payments that may be made to petitioner to only those shelter allowances which became due after May, 1976. That regulation provides in part: "(e) *Correction of underpayments (current recipients).* Payments to current recipients to correct underpayments shall be made in each case within 30 days after discovery of the underpayments, subject to the following conditions: (1) Retroactive payments shall be made only for the 12 months preceding the month in which the underpayment is discovered, or such shorter term as otherwise prescribed." It appears from correspondence between the bank and the department and the department's own records that, with respect to the payments that accrued in the period from December, 1973 through December, 1975, which concededly should have been made, the department became aware that those payments had not been made well within the time limitation of 18 NYCRR 352.31 (e). With respect to the payments that accrued from January to May, 1976, when the department considered petitioner's case in June, 1976 it must have become aware that those payments had not been made. Accordingly, the State commissioner was not barred by 18 NYCRR 352.31 (e) (1) from granting petitioner retroactive shelter allowances for that period. Because the record is barren of information concerning the present status of the foreclosure action brought against petitioner, we are unable to specify the relief to which she is entitled, ancillary to our annulling of the State commissioner's determination. Petitioner is entitled to retroactive benefits only if present payment of those benefits will result in the mortgagee's forbearance from prosecuting its foreclosure action so as to provide petitioner with a reasonable opportunity to bring her mortgage payments current. Accordingly, we remit the matter to the respondent Commissioner of the Nassau County Department of Social Services to (1) calculate the amount of the shelter allowances to which petitioner was entitled for the period from December, 1973 to present, and which were not paid by the department, (2) determine from the mortgagee whether present payment of that amount to the mortgagee will result in the mortgagee's forbearance from prosecuting its foreclosure action so as to provide petitioner with a reasonable opportunity to bring her mortgage payments current, and (3) if such forbearance would result, pay the full amount of arrears to the holder of the mortgage and thereafter pay petitioner the monthly shelter allowance to which she is entitled. With respect to the calculation of the shelter allowances owing, we determine that petitioner is entitled, at a minimum, to monthly shelter allowances for the period from July, 1975 to the present, less $350, assuming that she remained eligible for public assistance throughout that period, since those allowances were not lawfully deleted from her grant. Petitioner is also entitled to allowances for September and December, 1974 and February and March, 1975. With respect to the period from December, 1973 through May, 1974, the department shall determine anew whether it made the payments it was required to make to the mortgagee bank for those months. The State commissioner made no finding on this issue and we are unable to do so. We note, however, that the evidence adduced on this issue

by the department at the fair hearing was far from conclusive in light of the nature of petitioner's evidence to the contrary. In the event that petitioner is unsatisfied with the actions taken by the department pursuant to our direction herein, she may request a further fair hearing before the respondent State commissioner. Titone, J. P., Gulotta, Margett and O'Connor, JJ., concur.