**Rita BEAULIEU**

v.

**CITY OF LEWISTON et al.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1981.

Decided Jan. 27, 1982.

Karen B. Herold, Pine Tree Legal Assistance, Inc. (orally), Lewiston, for plaintiff.

John B. Cole, Asst. City Atty. (orally), Frederick G. Taintor, City Atty., Fredda Wolf, Stephen Filler, Corp. Counsel, Lewiston, for defendants.

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The plaintiff, Rita Beaulieu, appeals from an order of summary judgment issued by the Superior Court (Androscoggin County) dismissing her action which challenged, under 42 U.S.C. § 1983, as unconstitutional, a provision of the Lewiston General Assistance Ordinance. Plaintiff additionally challenges, under 14 M.R.S.A. §§ 5951–5963, the ordinance as illegal because it conflicts with the statutory mandate set forth in 22 M.R.S.A. ch. 1251 §§ 4450–4508, the enabling act for municipal general assistance programs. We affirm in part but vacate in part and remand to the Superior Court.

## I.

Each Maine municipality is required to establish and operate a general assistance program. 22 M.R.S.A. § 4504(1). A "general assistance program" is statutorily defined as

a service administered by a municipality for the immediate aid of persons who are unable to provide the basic necessities essential to maintain themselves or their families. A general assistance program provides a specific amount and type of aid for defined needs during a limited period of time and is not intended to be a continuing "grant-in-aid" or "categorical" welfare program. This definition shall not in any way lessen the responsibility of each municipality to provide general assistance to a person each time that the person has need and is found to be eligible to receive general assistance.

22 M.R.S.A. § 4450(2). Eligibility for relief is governed by the municipal ordinance which establishes the general assistance program. *Inter alia*, these standards of eligibility "[g]overn the determination of need of persons applying for relief and the amount of assistance to be provided to eligible persons...." 22 M.R.S.A. § 4504(3)(A). An "eligible person," in turn, is one "who is qualified to receive general assistance from a municipality according to standards of eligibility determined by the municipal officers ..." and set forth in the ordinance. 22 M.R.S.A. § 4450(1).

Availability of relief under the Lewiston ordinance is predicated on a bifurcated inquiry. First, the applicant must be found eligible for general assistance, a finding primarily dependent on a determination of need. Lewiston Rev. Ordinances ch. 13A, § 13A–35 (1979). This section defines need as the existence of a deficiency between available resources and necessary expenses; an applicant whose available resources in the form of income and assets are insufficient to meet necessary expenses for himself and/or his family and who otherwise meets the above eligibility requirements [consisting primarily of the applicant's specific assets] is entitled to assistance from the City of Lewiston.

Upon a determination that the applicant is eligible for general assistance, however, additional guidelines controlling the amount and kind of assistance are invoked. Included among these guidelines is Lewiston Rev. Ordinances ch. 13A, § 13A–51(B) (1979)[1]

---

1. This ordinance provides in full:

ARTICLE VII—ASSISTANCE GUIDELINES
Section 13A–51 Maximum Allowable Standards.

Once it has been determined that an individual is eligible for receipt of assistance, the Overseer shall employ the following standards in the following categories for determining the amount and kind of assistance to be given:

. . . . .

B. *Housing*

Upon the determination that the applicant is eligible for assistance with housing pay-

ments, the measure will be the actual rent to be paid by the person if it is at or below the following: $25.00 per week unheated and $40.00 per week heated; $25.00 per week for a single room shall be the maximum allowable standard. No rent payment shall be paid for a period in excess of two consecutive weeks. The municipality shall not pay back rents or deposits. *The Overseer will not pay mortgages, interest on a private dwelling or trailer,* or payments on Bond for Deed. Deposits will be allowed in budget sheets one time only. Rent payments to a relative will not be authorized unless proof is made to the Overseer of a bonafide landlord-tenant rela-

which prohibits the Overseer from making mortgage or interest payments on a private dwelling or trailer.

The plaintiff, a resident of Lewiston, owns and lives in a mobile home which is subject to a security interest. Monthly mortgage payments amount to $84.57. After the secured party sent a "right to cure notice" to the plaintiff, who was unemployed at the time, she twice applied to the Lewiston Welfare Department in December 1979 for mortgage payment assistance. The Overseer[2] of Lewiston's general assistance program denied these requests for aid pursuant to section 13A–51(B) of the Lewiston ordinance. Assistance for lot rental payments and food payments, on the other hand, was granted to the plaintiff. A fair hearing, held pursuant to 22 M.R.S.A. § 4507 and Lewiston Rev. Ordinances ch. 13A, § 13A–54, resulted in an affirmance of the Overseer's denial of mortgage payment assistance. The fair hearing officer noted that although the plaintiff was found eligible for general assistance on the basis of need, mortgage payment assistance is not an "allowable expense" under the assistance guidelines. Denial of the assistance was thus thought to be proper.

Having exhausted her administrative remedies, the plaintiff commenced an action in the Superior Court challenging both the legality of section 13A–51(B) of the ordinance under the enabling statutes, 22 M.R.S.A. §§ 4450–4508, and the constitutionality of the ordinance under equal protection principles. The Superior Court issued an order of summary judgment in favor of the defendants, finding the ordinance to be proper under the general assistance statutes and to be constitutional, and dismissing the complaint.[3] From this order, the plaintiff appeals.

■ Summary judgment may be ordered "only 'when the facts before the court so conclusively preclude ... [a party's] recovery that judgment in favor of the other party is the only possible result,'" *Gagne v. Cianbro Corp.*, Me., 431 A.2d 1313, 1319 (1981), *quoting Wallingford v. Butcher*, Me., 413 A.2d 162, 165 (1980), because, on the basis of facts not subject to genuine dispute, the prevailing party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c). As this case is now postured before us, we must determine whether the lower court properly found that there is no genuine issue of material fact and, if so, whether the court's application of law to these facts was correct. *See Karantza v. Salamone*, Me., 435 A.2d 1384 (1981); *Salamone v. City of Portland*, Me., 398 A.2d 49 (1979).

We conclude that there exists an outstanding issue of material fact as to the plaintiff's eligibility for general assistance under 22 M.R.S.A. §§ 4450–4508. Summary judgment was therefore improper as to the state law statutory claim. The plaintiff's assertion of a distinct constitutional challenge against the City and the named individual defendants, presented in reliance upon 42 U.S.C. § 1983, requires us also to consider whether the Lewiston ordinance fails under the strictures of equal protection principles because of the potential difference in the scope of remedy available under that section from that available under state law.

---

tionship between the relative and the applicant.
(Emphasis added.)

**2.** " 'Overseer' means an official designated by a municipality to administer a general assistance program." 22 M.R.S.A. § 4450(4).

**3.** The complaint was framed as a class action, M.R.Civ.P. 23, and it also sought the attorney's fees permitted by 42 U.S.C. § 1988. The lower court's order did not rule on these elements of the action. Nor did it expressly consider the plaintiff's alternative ground for relief that, by virtue of Lewiston Rev. Ordinances ch. 13A, § 13A–35, quoted *supra* at 336, which predicates general assistance on the basis of need, the City must provide mortgage payment assistance to one, such as the plaintiff, who is found in fact to be needy. The merits of these claims not discussed in the order of dismissal below have not been raised on this appeal, and consequently we express no opinion as to them.

## II.

█ We first consider the plaintiff's equal protection[4] challenge to the ordinance, brought pursuant to 42 U.S.C. § 1983.[5] The plaintiff contends that the ordinance embodies an unconstitutional distinction between tenants, to whom rental payment assistance is available, and owners of homes or trailers, who are denied mortgage payment assistance. The ordinance is thus thought to treat the class of relief applicants who *rent* shelter in an unconstitutionally dissimilar manner from the class of relief applicants who *are purchasing* shelter.

█ It is clear that governmental efforts to alleviate social and economic problems may draw constitutionally sound distinctions among beneficiaries if the dissimilar treatment is rationally related to the objectives of those efforts. *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186, 195 (1981); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Lambert v. Wentworth*, Me., 423 A.2d 527, 531 (1980); *Shapiro Brothers Shoe Co. Inc. v. Lewiston-Auburn Protective Association*, Me., 320 A.2d 247, 256 (1974). The party challenging the classification bears the burden of demonstrating by clear and irrefutable evidence its arbitrariness and irrationally discriminatory nature. *Warren v. Municipal Officers of Gorham*, Me., 431 A.2d 624, 628 (1981); *Ace Tire Co., Inc. v. Municipal Officers of Waterville*, Me., 302 A.2d 90, 100 (1973). Further, the law will be upheld if there exists any *conceivable* state of facts which justifies the distinction.[6] *Warren*, 431 A.2d

---

4. The denial of equal protection of the laws is proscribed by Me. Const., art. 1, § 6–A, and by U.S. Const., amend. XIV, § 1. The restrictions imposed by the Maine Constitution are no more stringent than those created by the federal Constitution. *State v. Richardson*, Me., 285 A.2d 842, 844 (1972).

5. In its entirety, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A municipality may properly be sued for monetary, declaratory, and injunctive relief under § 1983 where "the action that is alleged to be unconstitutional implements or executes a[n] ... ordinance ... or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, 694, 98 S.Ct. 2018, 2035, 2037, 56 L.Ed.2d 611, 635, 638 (1978). The City of Lewiston is therefore a proper party to a § 1983 suit challenging its ordinance which allegedly has deprived the plaintiff of rights protected by the Constitution.

In *Monell*, the Supreme Court also ruled that "local government officials sued in their individual capacities are 'persons' under § 1983 in those cases in which ... a local government would be suable in its own name." *Id.* at 690 n. 55, 98 S.Ct. 2035, n. 55, 56 L.Ed.2d at 635. The class of plaintiffs in *Monell* challenged a policy maintained by the New York City Board of Education and Department of Social Services requiring pregnant employees to commence an unpaid leave of absence before such leaves became medically necessary. The Supreme Court's decision in the case permitted the § 1983 action to be maintained, not only against the City of New York, the Department of Social Services, and the Board of Education, but also against the mayor of New York, the Department's commissioner in his official capacity, and the Board's chancellor in his official capacity.

The complaint in the instant case named as defendants Beverly Heath in her capacity as the Director of the Lewiston Welfare Department (the Overseer), who initially denied the plaintiff's request for mortgage payment assistance, and Charlotte O'Connor in her capacity as the fair hearing officer. Under *Monell*, these individuals must be regarded as proper party-defendants as to the § 1983 claim in this action. *See also Thiboutot v. State*, Me., 405 A.2d 230 (1979), *aff'd sub. nom. Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), a § 1983 action brought against the State of Maine and David Smith in his capacity as the Commissioner of the Department of Human Services. *Cf.* discussion of the propriety of Heath and O'Connor as party-defendants as to the claim challenging the ordinance on statutory grounds, *infra* at 342–344.

6. The plaintiff suggests that this case be remanded for a hearing where the actual rational basis for the classification may be established. Reliance is placed on *Foster v. Pennsylvania*, 47 Pa.Commw.Ct. 441, 408 A.2d 216 (1979), which remanded an action challenging a welfare statute for a hearing to allow consideration of evidence bearing on its rationality. In support of this order, the court cited *Hagans v.*

at 628; *McNicholas v. York Beach Village Corp.*, Me., 394 A.2d 264, 269 (1979). Thus, even if the classification lacks mathematical precision, the law survives constitutional scrutiny unless there exists no conceivable set of facts which prevents the characterization of the renter/owner distinction as arbitrary, invidious, or irrational.

■ The Equal Protection Clause is not offended by the systematic denial of public assistance to a particular group of applicants *if* the identification of that group and the treatment to which it is exposed enjoys a reasonable basis and does not result in invidious discrimination. The body of federal jurisprudence examining general and categorical assistance laws demonstrates that governmental allocations of welfare resources may be predicated on generalized characterizations of the classes of persons most needy and deserving of that assistance. Such generalizations, however, are necessarily imperfect and consequently result both in some over-inclusiveness, allowing benefits to those not as truly needy as the government had intended to require, and in some under-inclusiveness, denying benefits to those whom, on an individual basis, the government would have intended to provide assistance.

In the seminal case of *Dandridge v. Williams*, the Court considered an equal protection challenge against a Maryland regulation which imposed a ceiling on the amount of general assistance to which a single family was entitled. Recognizing that the maximum grant regulation both encouraged the recipient to seek employment and also effected financial parity between the recipient and the working poor, the Court held the regulation to be rationally based and

thus constitutionally sound. 397 U.S. at 486–87, 90 S.Ct. at 1162, 25 L.Ed.2d at 502–03. In so holding, the Court recognized that the assistance ceiling, as understood in light of the two objectives, would work a hardship on those families which have no employable members; indeed, none of the family members of the plaintiffs were employable. *Id.* at 486, 90 S.Ct. at 1162, 25 L.Ed.2d at 502. Further, the regulation operated to undercut the employment incentive in those families whose need is less than the regulatory maximum. *Id.* at 486, 90 S.Ct. at 1162, 25 L.Ed.2d at 502–03. In these ways, the regulation was both under-inclusive and over-inclusive. The regulation's imperfections and the inequalities it created were nevertheless subordinated to the generality of its purpose; "the Equal Protection Clause does not require that a State must choose between attacking every aspect of à problem or not attacking the problem at all." *Id.* at 486–87, 90 S.Ct. at 1162, 25 L.Ed.2d at 503. The provision therefore passed constitutional muster.

In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court considered a provision of the Social Security Act which operated to deny insurance benefits to a widow and step-child of a deceased wage-earner, because the widow had been married to the wage-earner for less than nine months. Holding that the statute was not violative of equal protection principles, the Supreme Court found the provision to be rationally grounded because it reduced the possibility that applicants who had entered into a sham marriage in contemplation of imminent death would qualify for benefits.[7] *Id.* at 780, 95 S.Ct. at 2474, 45 L.Ed.2d at 547. As in *Dandridge*, however,

*Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In *Hagans*, however, the Supreme Court remanded a suit challenging a public assistance statute on equal protection grounds to the United States Court of Appeals for the Second Circuit in order for the circuit court to determine whether there existed a rational basis for the statute. That court had previously considered the case only to determine and ultimately deny the existence of federal jurisdiction. The Supreme Court reversed the Second Circuit's dismissal for lack of jurisdiction and

thus remanded for consideration of the merits themselves. *Id.* at 542–43, 94 S.Ct. at 1381–82. By citing *Hagans* for authority that evidence of an *actual* rational basis is necessary to sustain a statute against an equal protection challenge, the *Foster* court appears to have misconstrued the case, and we decline to follow its holding.

7. Alternative conditions for eligibility, such as the survivor's adoption of the deceased spouse's child during the marriage, were not challenged in *Salfi*.

the Supreme Court noted that the prophylactic rule governing eligibility for insurance benefits did not fully and precisely accomplish the legislative objective of preventing improper receipt of assistance. Spouses who are unexpectedly widowed within nine months of marriage might well be made ineligible for insurance benefits under the statute. And conversely, "if a wage earner lingers longer than anticipated," the survivor in a sham marriage would not be excluded from eligibility. *Id.* 422 U.S. at 781, 95 S.Ct. at 2474, 45 L.Ed.2d at 548. In the face of these imperfections,

> the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions. . . . Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than non-members. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule. We conclude that the duration-of-relationship test meets this constitutional standard.

*Id.* at 777, 95 S.Ct. at 2472, 45 L.Ed.2d at 545–46.

A third case, *Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977), further demonstrates that the Equal Protection Clause does not mandate operational precision in public assistance qualification provisions. There, a challenge was mounted against a provision of the Social Security Act which terminated benefits being received by a disabled child who had been the dependent of a covered wage-earner, when the dependent-recipient married a disabled person not entitled to benefits. Both Jobst and his wife were disabled by cerebral pal-

sy. On the other hand, the provision allowed a continuation of benefits to the dependent-recipient if the spouse was receiving assistance under the Act. In its opinion, the Court first identified the general purpose of the Social Security Act as the protection of dependents against the loss of earnings by the wage earner. *Id.* at 52, 98 S.Ct. at 98, 54 L.Ed.2d at 234. The generalized rule, terminating benefits to a recipient upon marriage, is premised on the legitimate factual assumption that "a married person is less likely to be dependent on his parents for support than one who is unmarried." *Id.* at 53, 98 S.Ct. at 99, 54 L.Ed.2d at 235. The Court also identified the empirical flaw in this proposition: frequently, "financial independence and marriage do not go hand in hand." *Id.* at 52, 98 S.Ct. at 98, 54 L.Ed.2d at 234. Nonetheless, the rational nexus between the termination provision and the governmental objective was found to be sufficient to assure that the statute operated in a manner not violative of the Equal Protection Clause.

In *Jobst,* the Court also considered, as it affected the constitutionality of the challenged provision, the statute which entitled the dependent-recipient to continuing support if the spouse also receives benefits. The Court characterized this statute as an attempt to ameliorate the harsh effect of the basic prophylactic rule challenged by Jobst. Congress may have rationally concluded that if the spouse is also the recipient of secondary benefits, the marriage would not constitute an event marking the financial independence of the recipient-dependent. This legislative scheme was not rendered constitutionally deficient by Congress' failure to further enlarge the class of marriages which do not terminate benefits to include those in which the spouse, although not the recipient of assistance, is disabled.

> The broad legislative classification must be judged by reference to characteristics typical of the affected classes rather than by focusing on selected, atypical examples.

. . . . .

Congress could reasonably take one firm step toward the goal of eliminating the hardship caused by the general marriage rule without accomplishing its entire objective in the same piece of legislation. *Id.* at 55, 57, 98 S.Ct. at 100, 101, 54 L.Ed.2d at 236, 237.

■ The purpose underlying the Lewiston general assistance program is to provide funds "for the immediate aid of persons who are unable to provide the basic necessities essential to maintain themselves or their families." 22 M.R.S.A. § 4450(2); Lewiston Rev. Ordinances ch. 13A, § 13A–2. *See also Mathews v. DeCastro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389, 394 (1976). Section 4450(2) of the statutes and the identically framed section 13A–2 of the Lewiston ordinances specify that the general assistance program provides funds designated to satisfy specific needs. The prohibition against relief in the form of mortgage payment assistance appears to us to be the embodiment of a reasonable governmental judgment that those applicants engaged in the process of *purchasing* shelter are not as needy and deserving of aid as those who *rent* shelter. It is a rational assumption that purchasers enjoy some equity in the premises. This equity, to the extent that it exists, may constitute a financial cushion protecting the mortgagor from destitution. In the equity, the purchaser may thus possess the very means to satisfy the immediate needs which, if those means did not exist, would form the basis for eligibility for municipal general assistance.

Renters, on the other hand, have no comparable security,[8] and their exposure to immediate destitution is therefore potentially greater than that experienced by purchasers. The drafters of the Lewiston ordinance were thereby entitled to formulate the policy, embodied in section 13A–51(B). The eligible renters are entitled to shelter assistance while purchasers, who usually possess the asset of equity, are characteristically less in need of immediate shelter assistance.

We hasten to note that the City's general assistance program does not *categorically foreclose* the availability of relief to shelter purchasers. Rather, it denies aid only in the form of mortgage payment assistance. Just as the United States Supreme Court held in *Califano v. Jobst*, discussed *supra*, that governmental attempts to partially alleviate disparities in its social and economic assistance programs are constitutionally proper, we find that the availability of some aid to purchasers tied to needs not directly related to the cost of mortgage payments does not undermine the City's assumption that the purchasers are potentially less needy than renters. Safeguards against making general assistance available to non-needy purchasers are provided by the ordinance's general scheme that need is the primary factor in determining eligibility. Lewiston Rev. Ordinances ch. 13A, § 13A–35. When the applicant, either a renter or purchaser, is shown to be needy under the eligibility standards, some degree of assistance becomes available.

8. Section 13A–31 of the Lewiston ordinances states that eligibility may be premised on attempts to dispose of real property, other than that occupied as a home, "in order to convert it into assets which can be applied toward meeting present needs." Any equity in realty held by renters, then, is subject to liquidation so that the proceeds may be used to satisfy those needs for which the applicant seeks general assistance. This provision, of course, would apply only to those renters who are purchasing or who have purchased property. The cash realized from the conversion of the equity would then be considered in the Overseer's computation of the renter-applicant's present needs. Therefore, the determination of the renter's eligibility for general assistance accounts on an individual basis for any security possessed by the renter in the form of the equity.

It is conceivable, however, that there are more purchasers who enjoy equity in their shelter than renters who enjoy equity in property other than their residence. The City may rationally assume that purchasers characteristically possess assets in property and that renters do not. Accordingly, the City can, within the strictures of the Equal Protection Clause, automatically reduce the level of benefits it makes available to those who are purchasing shelter while not doing so to that sub-group of renters who are purchasing property other than shelter.

The plaintiff asserts that the ordinance is under-inclusive because it denies shelter assistance to one form of needy residents (purchasers) while it provides shelter assistance to another (renters). There may well exist situations in which the City's assumption underlying the foreclosure of mortgage payment assistance is incorrect, such as where the equity is not sufficiently great that, if converted into liquid assets, it could satisfy immediate needs.[9] The Equal Protection Clause, however, does not demand perfection or precision in governmental attempts to remedy economic ills. *Dandridge, Salfi,* and *Jobst* vividly demonstate that action which effects less than a total resolution of the problem to which the effort is directed is not constitutionally infirm. The classification drawn need only be the rational conclusion that the demarcation will promote the objective. The renter-purchaser distinction satisfies this criterion.

This is not a case such as *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), in which the Court held as a denial of equal protection a statute prohibiting the distribution of food stamps to members of households containing unrelated individuals. That restriction, premised on the relationship among residents of a household, was held unrelated either to the express statutory purpose of alleviating hunger and malnutrition or to any other legitimate governmental interest. *Id.* at 534–37, 93 S.Ct. at 2825–27, 37 L.Ed.2d at 788–89. In fact, it operated to deny assistance to those who need it most, namely, those who could not even afford to create the appearance of separate households in which only related persons would seem to reside. *Id.* at 537, 93 S.Ct. at 2827, 37 L.Ed.2d at 790. In the case at hand, the denial of mortgage payment assistance is founded upon a rational premise: the purpose of general assistance is to provide immediate and necessary aid; the existence of a mortgage obligation rationally suggests the existence of equity from which the purchaser may draw to satisfy those very needs.[10]

The ordinance therefore does not violate the Equal Protection Clause. Because there exists no underlying violation of the rights secured to the plaintiff by the Constitution, the lower court properly ruled, in issuing its order of summary judgment, that the defendants are entitled to judgment on the plaintiff's 42 U.S.C. § 1983 claim as a matter of law.

### III.

#### A.

Preliminary to our discussion of the plaintiff's claim that section 13A–51(B) of the Lewiston ordinances is illegal as violative of the enabling statutes, we must examine whether the two individual defendants,

---

9. Any humanitarian concern for the plight of those not protected by the ordinance does not bear on this constitutional analysis. As the Supreme Court noted in *Dandridge,*

[w]e do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration.... But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

397 U.S. at 487, 90 S.Ct. at 1162, 25 L.Ed.2d at 503 (citations omitted).

10. Further, mortgage payment assistance would be tantamount to a long-term benefit enjoyed by the purchaser, as it would hasten the discharge of the mortgage. Because even the receipt of a short-term benefit, the payment of the installment immediately due, would be improper because the purchaser is legitimately regarded as less needy than the renter, the City may rationally seek to prevent the purchaser from achieving the windfall which would result from realization of the equity, created in part by the municipality, at a later date.

sued in their official capacities, are proper party-defendants to this claim.[11]

Beverly Heath, a named defendant and the Overseer [12] of the City's general assistance program, first invoked section 13A-51(B) of the ordinances as the basis for rejecting the plaintiff's application for mortgage payment assistance. In addition to administering the City's general assistance program, the Overseer is charged with making the initial determinations of both the applicant's eligibility for general assistance and the amount and kind of assistance to which the applicant is entitled. When an aggrieved applicant invokes his or her right to a fair hearing, the Overseer becomes a partisan to the proceedings. The Overseer, along with legal counsel, is afforded access to the fair hearing; the claimant, the claimant's counsel, and witnesses are the only others permitted to attend. Lewiston Rev. Ordinances ch. 13A, § 13A–54(A)(4)(a). At the hearing, both the claimant and the Overseer may present their positions through testimony and documentary evidence; cross-examination of witnesses is permitted. *Id.*, § 13A–54(A)(4)(e). Further, the decision of the fair hearing officer is binding on the Overseer. *Id.*, § 13A–54(A)(5).

■ Because the ordinances cast the Overseer as the party representing the City's interest in the proceedings, Beverly Heath, as the City's Overseer,[13] is a proper party to the plaintiff's claim that the municipal general assistance program does not satisfy the statutory requirements. *See McElroy v. State Employees Appeals Board*, Me., 427 A.2d 958, 960 (1981); *State v. Maine Labor Relations Board*, Me., 413 A.2d 510, 512–13 (1980); *Inhabitants of Boothbay Harbor v. Russell*, Me., 410 A.2d 554, 560–61 (1980).

■ The second individual named as a defendant is Charlotte O'Connor, the City's fair hearing officer who upheld Heath's denial of the mortgage payment assistance requested by the plaintiff. Lewiston Rev. Ordinances ch. 13A, § 13A–54, which governs the procedure by which fair hearings are conducted, makes clear that the sole function of the fair hearing officer is to impartially adjudicate the claims of aggrieved general assistance applicants arising from the Overseer's decisions, acts, or failures to act. Among the requirements demanded of a fair hearing officer are impartiality, an ability to elicit the evidence "necessary for a fair determination," a capability to evaluate all the evidence "fairly," and a capability "to interpret to the Overseer any evidence of unsound, unclear, or inequitable policies, practices, or actions...." *Id.*, § 13A–54(A)(2). Because no independent enforcement or prosecutorial powers are vested in the fair hearing officer, she should not become a partisan when her decision is subject to appeal. *McElroy*, 427 A.2d at 960. Therefore, be-

---

11. *Compare* note 5 *supra*, discussing the propriety of the named defendants as parties against the plaintiff's § 1983 claim.

12. *See* note 2 *supra*.

13. The statutory claim against Heath which is set out in the complaint is clearly directed against her in her capacity as the Overseer of the Lewiston Welfare Department. While the plaintiff alleges in the text of the complaint that Heath is both the Director and the Overseer, the caption itself names Heath as a defendant only "in her capacity as Director of the Lewiston Welfare Department...." The duties of the Director as they relate to this asserted claim are not specified in the pleading. We need not reach the question of whether Heath may be a proper defendant solely in her capacity as Director of the Welfare Department, because we find that the substance of the allegations in the complaint itself makes clear that she has been included as a party in her capacity of Overseer. "The caption of a complaint constitutes no part of the statement of the cause of action, and the rights of parties to relief cannot be made to depend upon what may appear in the caption of the case." *Lund ex rel. Wilbur v. Pratt*, Me., 308 A.2d 554, 557 (1973). We may thus properly look beyond the formal caption to the allegations in the body of the complaint to determine whether Heath is a proper party to this claim. *See Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir. 1959); *Tyrolf v. Veterans Administration*, 82 F.R.D. 372, 375 (E.D.La.1979). *See generally* 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1321 at 458–59 (1969). We conclude that, at least in her capacity as the City's Overseer, she is a proper party.

cause the City's officer who presides over fair hearings on petitions concerning application for general assistance is empowered only to render impartial decisions within a limited jurisdiction, we conclude that O'Connor, in her official capacity as the City's fair hearing officer, is not a proper party to this statutory claim. *See Lincoln v. Inhabitants of Newcastle*, Me., 434 A.2d 1011, 1011 n.1 (1981); *McElroy*, 427 A.2d at 960; *Inhabitants of Boothbay Harbor*, 410 A.2d at 560.

### B.

We now reach the merits of the plaintiff's claim that section 13A–51(B) of the Lewiston ordinances is unlawful as violative of the statutes, 22 M.R.S.A. §§ 4450–4508, under which the municipal regulations were promulgated.

By statutory command, each municipality must establish a general assistance program. § 4504(1). Each such program is designed to provide "immediate aid [to] persons who are unable to provide the basic necessities essential to maintain themselves or their families." § 4450(2).[14] A municipal ordinance is the mandated vehicle by which the program is operated and administered. § 4504(1). Included among the provisions of that regulation must be standards of eligibility for relief. § 4504(3). The plaintiff claims that this statutory scheme governing municipal general assistance programs does not permit the municipality, by implementing a blanket policy of denial, to disallow mortgage payment assistance to applicants who are otherwise qualified to receive general assistance. We agree.

The definition of a general assistance program, effective both now and at the time the plaintiff applied for benefits in December 1979, was enacted by P.L. 1977, ch. 417, § 2. The enactment was the fruit of two separate drafts. The first, presented in Leg.Doc. 1696, 108th Leg., characterized a general assistance program by the language which now appears as the first two sentences of section 4450(2). Subsequently, that definition was expanded in Leg.Doc. 1868, 108th Leg., to include the third sentence of the current section 4450(2): "[t]his definition shall not in any way lessen the responsibility of each municipality to provide general assistance to a person *each time that the person has need and is found to be eligible to receive general assistance.*" (Emphasis added.) The significance of this provision to the instant case is twofold. First, it makes clear that the Legislature did not intend its definition of a general assistance program to be viewed constrictively, thus to defeat the broader purpose of providing aid to the needy. This observation is bolstered by our awareness that the sentence was added after the original bill was drafted, dispelling any doubts as to the municipality's civic obligation. Such an intent coheres with the more general proposition that public welfare laws are to be construed liberally to effect their remedial purposes. *Damon v. Secretary of Health, Education and Welfare*, 557 F.2d 31, 33 (2nd Cir. 1977), interpreting the Social Security Act "in consonance with its humanitarian aims"; *Gordon v. District Unemployment Compensation Board*, 402 A.2d 1251, 1255 n.6 (D.C.1979).

Second, and more important in the context of the plaintiff's specific challenge to the Lewiston ordinance, the third sentence of section 4450(2) appears to predicate entitlement to public assistance upon the satisfaction of two conjunctive conditions: that the applicant "has need," and that the applicant "is found to be eligible to receive general assistance." On the other hand, section 4504(3)(A) requires only that the regulation include standards which "[g]overn the determination of need of persons applying for relief and the amount of assistance to be provided to eligible persons." The latter element of this language cannot be seen as identifying an actual condition of eligibility, because by its own terms eligibility is assumed. Therefore, the

---

**14.** The complete statutory definition of a general assistance program is quoted *supra* at 336.

first element of the subsection in question, "the determination of need," must be seen as the *sole* condition to eligibility. In short, under section 4504(3)(A), an "eligible person," for the purpose of determining the amount of assistance to be received, is a person who has applied for relief and been determined to have need of such relief.

To the extent that section 4450(2) may appear to condition entitlement to general assistance on both need and eligibility under the municipal ordinance, and that section 4504(3)(A) equates eligibility under the municipal ordinance with need itself, the requirements of the statutory scheme at issue here are ambiguous because section 4450(2) appears to set forth two distinct requirements that the applicant must satisfy, while section 4504(3)(A) treats the two as a single requirement. We need not, however, and do not attempt to determine if any inconsistency exists in fact between these two statutory provisions because we are pursuaded for two reasons to give controlling effect to section 4504(3)(A) even if any such conflict exists. First, the introductory language of section 4450 itself provides that the definitions included in that section apply throughout chapter 1251 of Title 22 "unless the context indicates otherwise...." The context of section 4504(3)(A) does in fact provide that need is the sole criterion for eligibility, and we find in the introductory language of section 4450 an express legislative intent that the terms of section 4504(3)(A) govern eligibility despite the potential existence of an ambiguity on that point in section 4450(2).

█ Additionally, general statutory provisions usually yield to specific ones. *Cum-* *berland Farms Northern, Inc. v. Maine Milk Commission*, Me., 428 A.2d 869, 873 (1981). At issue in this case is the propriety of the City's standards denying relief in the particular form of mortgage payment assistance. Section 4504(3)(A) specifically governs municipal standards of eligibility for aid, while section 4450(2) defines in a broader way the nature of a general assistance program. Thus, in this context, section 4504(3)(A), rather than the latter provision, must be seen to embody the ultimate legislative intent establishing the limits within which each municipality may operate to fix standards of eligibility. Because section 4504(3)(A) requires the municipality to adopt standards which "[g]overn the determination of need of persons applying for relief," the City is proscribed from predicating eligibility upon standards other than need.[15]

In the case at bar, the parties do not challenge the determination made by the Overseer and confirmed by the fair hearing officer that the plaintiff was eligible on the basis of need to receive general assistance. Under section 4504(3)(A), this is the ultimate and exclusive inquiry. If the applicant is found to be so eligible, she must be afforded "immediate aid ... to provide the basic necessities essential to maintain" herself. Necessary to this determination, however, is a subsidiary consideration of whether persons living in shelter that they are purchasing are *in fact* in need of immediate aid.

It is improper under this statute for a municipality to enact an ordinance which embodies an irrebuttable presumption that a purchaser of shelter has no need of imme-

---

15. In ruling that the City is permitted to make qualitative distinctions among the types of aid it may make available, the trial court relied on the second sentence of § 4450(2): "[a] general assistance program provides a specific amount and type of aid for defined needs during a limited period of time and is not intended to be a continuing 'grant-in-aid' or 'categorical' welfare program." When viewed in the larger context of this definitional section, however, this provision merely operates to identify the nature of general assistance payments. Unlike categorical assistance, general assistance relief is predicated on a showing that the applicant has a specific and immediate need which must be satisfied to ensure his or her maintenance. Relief is subsequently directed to satisfy those needs; the relief is thus in a specific amount and *of a particular type, e.g.,* aid for food, clothing, or shelter payments.

Under the statutory definition of a general assistance program, if the assistance requested by the qualified applicant is critical "to provide the basic necessities essential to maintain" himself or herself, the City must provide it.

diate aid. While it may be true that some purchasers enjoy an equity that can be converted immediately into cash, other purchasers either may have no such equity in the property or may have an equity that cannot be readily liquidated. Accordingly, the Overseer must make an individual factual determination of whether the purchaser-applicant has such an immediate need for aid, taking into account the extent and liquidity of the applicant's proprietary interest in the shelter, as would entitle him or her to general assistance. Factors germane to this determination include, but are not limited to: (1) the marketability of the equity in the shelter, (2) the availability of the equity interest to provide the basis for short-term borrowing capacity of the applicant to meet immediate maintenance needs, (3) the amount of the equity, (4) the extent to which liquidation may aid in effecting financial rehabilitation of the applicant, (5) a comparison between the amount of the mortgage obligations and of anticipated rental charges if the applicant were to be dislocated to rental housing, (6) the imminence of the applicant's dislocation from owned housing because of need, (7) the likelihood that provision of shelter assistance will be effective to prevent such dislocation, and (8) the applicant's age, health, and social situation. *See State ex rel. Van Buskirk v. Wayne Township,* —— Ind. App. ——, 418 N.E.2d 234, 242 (1981) (holding that under a similar general assistance statute, a municipality could not uniformly deny mortgage payment assistance without considering the applicant's actual need); *Bryant v. D'Elia,* 77 A.D.2d 590, 592, 430 N.Y.S.2d 103, 107 (1980). *Compare* Lewiston Rev. Ordinances ch. 13A, § 13A–31, which conditions eligibility for aid on attempts to dispose of property other than that occupied as a home "in order to convert it into assets which can be applied toward meeting present needs." Indeed, the City's ordinance itself defines "need" as the disparity between *available* resources and necessary expenses. *Id.,* § 13A–35. The factors enumerated above must be considered to determine whether the equity is an *available* asset which may substitute for the *immediate* aid which the City would otherwise be

required to provide. *See* § 4450(2). By failing to recognize and make inquiry into these considerations, the City has not made a proper determination of need under the statute. While the Equal Protection Clause may tolerate the City's failure to make individual inquiry into the applicant's *actual* need, the enabling statutes, 22 M.R.S.A. §§ 4450–4508, do not.

There can be no doubt that shelter is a basic necessity essential to maintain a relief applicant, within the meaning of a general assistance program. *See Lambert v. Wentworth,* Me., 423 A.2d 527, 532 (1980); *Inhabitants of Vinalhaven v. Inhabitants of Lincolnville,* 78 Me. 422, 423, 6 A. 600, 600 (1886); *Inhabitants of Lee v. Inhabitants of Winn,* 75 Me. 465, 467 (1883). Shelter purchased by its occupant is no less essential to his or her "maintenance" than rented shelter is to the tenant. The continuing availability of that shelter is essential to the applicant's maintenance, stability, and even survival. The municipality's willingness to provide *rental* payment assistance does not discharge its responsibility for ensuring that those applicants for shelter assistance who are purchasing their homes or trailers are also provided with the aid necessary to meet an immediate need for continued maintenance. We find no legislative sanction permitting the City to characterize purchased shelter as nonessential, thereby allowing the municipality to force "otherwise eligible general assistance recipients out of their homes into rental units." *See Van Buskirk,* —— Ind.App. ——, 418 N.E.2d at 242. Not only would the construction urged by the City compromise the immediacy with which shelter assistance must be provided, *see* § 4450(2), but it would also implicate the "personal dignity and stability of persons on the edge of poverty . . . ." *Van Buskirk,* —— Ind.App. ——, 418 N.E. 2d at 242.

■ We therefore conclude that the City may not automatically deny mortgage payment assistance to those who are otherwise eligible for general assistance. Lewiston Rev. Ordinances ch. 13A, § 13A–51(B) does not comport with the statutory man-

date that need is the exclusive criterion for eligibility for relief under a general assistance program. Title 22 M.R.S.A. §§ 4450–4508 requires a more thorough examination of the purchaser-applicant's financial condition to reveal whether, despite her status as purchaser, she is eligible for shelter assistance on the basis of actual need. If so, she must be afforded "immediate aid . . . to provide the basic necessit[y] essential to maintain" herself.

 In this case, the plaintiff was found to be eligible on the basis of need as that need was determined under the existing Lewiston ordinance. In violation of the enabling statutes, this ordinance does not require, in the determination of need, consideration of the purchaser-applicant's *actual* financial situation. Consequently, because this initial determination of the plaintiff's need has not fulfilled the statutory mandate, there has not been a *complete* determination of her need and thus of her eligibility to receive general assistance from the City. This constitutes an outstanding and unresolved issue of fact, preventing entry of summary judgment. The lower court therefore erred in entering summary judgment in favor of the defendants on the plaintiff's claim that Lewiston Rev. Ordinances ch. 13A § 13A–51(B) is violative of 22 M.R.S.A. §§ 4450–4508.[16]

The entry is:

That part of the Superior Court judgment dismissing the plaintiff's claim that Lewiston Rev. Ordinances, ch. 13A, § 13A–51(B) is unconstitutional as violative of the Equal Protection Clause is affirmed. We vacate that part of the Superior Court judgment granting summary judgment to the defendants and dismissing the plaintiff's claim that the ordinance is illegal as violative of 22 M.R.S.A. ch. 1251 §§ 4450–4508, and we remand to the Superior Court with instructions to enter its order vacating the denial by the Overseer of plaintiff's application for shelter assistance and re-

turning the case to the Lewiston Overseer for the determination of plaintiff's eligibility for shelter assistance on the basis of need in accordance with this opinion.

The Superior Court shall also enter its order dismissing, as against defendant O'Connor, the plaintiff's claim that the ordinance is illegal as violative of 22 M.R.S.A. ch. 1251 §§ 4450–4508.

All concurring.

---

**16.** We have no occasion to consider the plaintiff's final claim that Lewiston Rev. Ordinances ch. 13A, § 13A–54(A)(4)(g) was violated because the fair hearing was not permanently recorded as that ordinance requires, in view of our disposition of the plaintiff's claim that the ordinance illegally conflicts with 22 M.R.S.A. §§ 4450–4508.