[No. 45921.    En Banc.    May 24, 1979.]

JOHN D. EDGAR, ET AL, *Appellants,* v. THE
STATE OF WASHINGTON, *Respondent.*

*Powell & Harnetiaux,* by *Bryan P. Harnetiaux* and *Sheila A. Malloy,* for appellants.

*Slade Gorton, Attorney General,* and *Earl R. McGimpsey, Assistant,* for respondent.

ROSELLINI, J.—This is an action for damages which the plaintiffs claim to have suffered in the amount of $100,000, as a result of the plaintiff husband's having been suspended from certain assignments of duty in the Washington Air National Guard (WANG). The Superior Court dismissed the complaint of the defendant's motion for judgment on the pleadings.

The complaint alleged in substance that the plaintiffs had suffered mental distress and humiliation as a result of intimidation, harassment and threats improperly inflicted upon the plaintiff husband (hereafter plaintiff) by his superior officers, and that these officers had used improper disciplinary and penal sanctions against the plaintiff. It alleged that these actions constituted arbitrary and capricious conduct, outrageous conduct, intentional infliction of emotional distress, invasion of privacy, invasion of civil rights, and a violation of guaranteed state and federal constitutional rights.

Pursuant to *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975), wherein we held that a complaint cannot be dismissed upon a motion for judgment on the pleadings if there is any conceivable set of facts which would support it, the plaintiff hypothesizes facts which he asserts he can prove at trial. They can be summarized as follows:

In 1970 the plaintiff, a captain, began active duty as a WANG officer at Spokane. During his 5 years with the Guard, he also performed other duties. In 1971 he was given a security clearance and allowed to fly "air alert," which involved handling or control over nuclear weapons

under a program prescribed by the United States Air Force. The program required screening, selection and continuous evaluation of all personnel, who were required to be physically sound and emotionally stable and to demonstrate good judgment and professional competence. The officer responsible for implementing the program was given the authority and means to immediately remove from nuclear weapons duties any individual whom he suspected of being unreliable. Daily assessment of individuals by their peers and immediate supervisors was directed, and certain criteria were given for determining reliability.

Further provisions, all found in the then current Air Force Manual, declared that failure to qualify for the program or remain qualified should not be used as a ground for punitive action, and the regulations with respect to this program did not authorize a supervisor to relieve a participant from all National Guard duty, but only from nuclear weapons duty.

Another section of the manual prescribed acceptable haircuts.

In 1973 the plaintiff's supervisors expressed dissatisfaction with his haircut. Thereafter, in spite of the fact that he had his hair cut to the length prescribed in the manual, and at one time secured a "burr" cut, they continued to harass him because his hair did not conform to their standards. He was reprimanded for consulting a civilian attorney about the matter and for filing a report with the Inspector General. He was threatened with suspension from the air alert program and even possible court martial and dismissal from the Guard. He was accused by his squadron commander of having sent the commander an anonymous "sick" letter which he had not written.

In January 1974, the plaintiff was handed a letter advising him that he was suspended from participation in the nuclear weapons program for 30 days. He was ordered to report for a psychiatric examination upon

which he received a favorable report. In spite of this, his suspension was extended to 6 months. But in March 1974, he received from National Guard authorities a new security clearance and instructions to return to his duties. As he was preparing to do so, he received notice that only the federal government could authorize his reinstatement and that his suspension would have to remain in effect until he received reinstatement orders from the United States Air Force.

Due to his suspension from the nuclear weapons program and impairment of other duties, the plaintiff's pay was reduced. As a result of the conduct of his superior officers, he and his wife suffered mental and emotional distress.

The plaintiff makes no contention that the actions taken against him and treatment accorded him by his superiors were authorized or condoned by state statutes, policies, regulations, or customs, or that the officers' actions were controlled by state law. Rather his contention is that these acts were contrary to or in excess of the authority conferred on the officers under the federal regulations found in the Air Force Manual. Nevertheless, he contends that because the National Guard is, officially at least, under the control of the State and the federal program is administered by the State, the State should be liable for negligent or intentional acts of the officers who administer that program, when those acts result in harm to other members of the Guard. He further contends that the acts of his superiors were tortious, entitling him to the recovery of general damages for emotional distress.

The Superior Court's dismissal of the action was grounded upon its conclusion (1) that section 1983 of the Civil Rights Act (42 U.S.C. § 1983) does not authorize suits against states, and (2) that RCW 4.92.090, under which the State of Washington has consented to be sued for its tortious conduct, was not intended to authorize damage suits by members of the National Guard for alleged torts of

other guardsmen. These are the two statutes upon which the plaintiff relies as authority for bringing the action.

■ With respect to section 1983, the Superior Court's conclusion was in accord with the decision of the United States Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 59 L. Ed. 2d 359, 99 S. Ct. 1139 (1979). It was there held that the Congress of 1871, in adopting a provision which is now section 1983, did not intend to subject the states to liability under the act, since such liability would have deprived them of the immunity from suits in federal courts which is provided in the eleventh amendment to the United States Constitution. The plaintiff argues that Congress may nevertheless have intended to permit such suits in state courts. However, he points to no language of the act which would justify such an interpretation. Section 1983 subjects to liability any

> person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .

The question before the court in *Quern,* as Justice Brennan's dissent quite clearly points out, was whether the word "person" as used in this statute included states. It is the inescapable holding of the court that it did not. That holding affirmed the earlier case of *Edelman v. Jordan,* 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974), and removed any doubt cast upon the question in *Monell v. Department of Social Servs.,* 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), wherein the court had found, reversing prior holdings, that the Congress did not intend to exclude municipal corporations from the coverage of the act.

As these cases reveal, the legislative purpose in enacting section 1983 was to provide a remedy for the crimes committed by the Ku Klux Klan against persons who attempted to exercise their newly acquired right to vote

and other civil rights, and persons who aided them in that exercise; and that remedy was to be available where state laws purported to protect civil rights but were ignored by those charged with the duty of enforcing them. Where state statutes denied civil rights, the courts would declare the acts unconstitutional and restrain their enforcement, a procedure which did not invade Eleventh Amendment immunity. Those for whose protection the statute was designed were thus afforded a remedy against the State, if its legislature enacted unconstitutional laws,[1] and against individuals (and now municipalities) where their acts interfered with the exercise of civil rights.

Inasmuch as the State is not suable under section 1983 for acts of its agents subjecting the plaintiff to deprivation of his civil rights, the remedy for such deprivation, if such there was, must be pursued against those individuals who committed the acts.

The remaining question is whether the plaintiff can maintain this action against the State upon a tort theory, under RCW 4.92,090, which provides:

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

In construing this statute, we have said that the official conduct giving rise to liability must be tortious, and it must be analogous, in some degree at least, to the chargeable misconduct and liability of a private person or corporation. *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965). We have held that the act excludes suits founded on discretionary governmental actions, as such actions are defined by this court. *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975). In our disposition of this case, we need not concern ourselves with that

---

[1]*See Ex Parte Young,* 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908) (a federal court may enjoin a state to conform its future conduct to the requirements of federal law).

exclusion. The question is, Does the plaintiff seek to hold the State liable "to the same extent as if it were a private person or corporation" or does he seek to impose upon it a liability which has no parallel in the private sector? The Superior Court, holding that the internal management of military affairs is an activity which is unique and not comparable to any private activity, based its decision upon *Feres v. United States,* 340 U.S. 135, 95 L. Ed. 152, 71 S. Ct. 153 (1950), which was cited in *Wark v. Washington Nat'l Guard,* 87 Wn.2d 864, 557 P.2d 844 (1976).

In *Wark,* we held that RCW 38.40.010-.030 provides the exclusive remedy for National Guardsmen wounded, killed or disabled in the line of duty. In interpreting our statutes, we noted the similarity of RCW 4.92.090 to the federal tort claims procedure act, 28 U.S.C. §§ 2671-2680 (1970), and the fact that the federal government provides a compensation system for members of the military similar to that which is provided in this state for guardsmen. We cited *Feres v. United States, supra,* wherein the United States Supreme Court had held that it was not the intent of Congress to provide an additional remedy for those whose claims were already expressly provided for in another statute.

The high court in *Feres* had also said that the military activities of government are so unique that there is no comparable function in the private sector and thus no common-law action in which a private person would be liable under similar circumstances. We did not cite that aspect of the opinion, and expressly found the exploration of the question unnecessary to the decision.

The three plaintiffs in *Feres* based their claims on alleged negligence of military personnel. One represented a soldier who had died in a barracks fire and the other two were victims of medical malpractice in army hospitals. While the Supreme Court observed that, in the usual civilian doctor-patient relationship, there is a liability for malpractice, and that a landlord would be liable to a tenant if an injury occurred as a result of a negligently maintained

heating plant, it declared that because there is no aspect of civilian life which is comparable to the military, there were no similar circumstances under which a private person would be liable.

In a footnote at page 141, the court drew attention to *Dinsman v. Wilkes,* 53 U.S. (12 How.) 390, 13 L. Ed. 1036 (1851), wherein it had said that a soldier may recover damages against his superior officer for a willful and malicious injury inflicted upon him by that officer. This is the general rule stated in 54 Am. Jur. 2d *Military & Civil Defense* § 294 (1971). *And see* Annots., 135 A.L.R. 10, 27 (1941); 158 A.L.R. 1462 (1945). In all of the cases where recovery was permitted, the actions were brought against the officers who committed the acts. And in all of them, the injury was of a kind which would have been compensable had it been inflicted by a private individual.

The Supreme Court in *Feres* did not indicate whether, if the injuries in the cases before it had been intentionally inflicted, it would have taken a different view of the government's liability under the federal tort claims procedure act. However, in a later case, recovery was permitted to an inmate of a federal prison for personal injuries suffered through the negligence of a government employee. The court noted that the federal government is not liable for the intentional torts of its employees, citing 28 U.S.C. § 2680(h).

It appears that at the time *Feres* was decided, the court regarded the internal administration of the military as being beyond the scrutiny of the judiciary. *Reaves v. Ainsworth,* 219 U.S. 296, 55 L. Ed. 225, 31 S. Ct. 230 (1911), was still its definitive pronouncement upon the subject. But 3 years after *Feres* the court decided, in the landmark case of *Burns v. Wilson,* 346 U.S. 137, 97 L. Ed. 1508, 73 S. Ct. 1045 (1953), that basic constitutional guaranties, such as due process, apply to the military. Since that time, there has been a growing body of federal law according to members of the armed forces certain limited rights of judicial

review of actions seriously affecting their interests. A number of law review articles, written by lawyers in the military, reveal the steady progress of judicial intervention and the growing awareness by the military itself of the importance of affording due process to its members. *See, e.g.*, Col. D. Peck, *The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities*, 70 Mil. L. Rev. 1 (1975); Maj. J. Wilkerson, *Administrative Due Process Requirements in the Revocation of On–Post Privileges*, 73 Mil. L. Rev. 107 (1976); Lt. Col. R. Semeta, *Administrative Discharge of Officers and Airmen*, 17 A.F. L. Rev. 79 (1975); Capt. A. Haessig, *The Soldier's Right to Administrative Due Process: The Right to be Heard*, 63 Mil. L. Rev. 1 (1973). *See also* R. Rivkin, *The Rights of Servicemen* (1972).

If the internal conduct of the military with respect to its personnel is subject to some degree of judicial review, it may well be argued that the government should also be held liable for tortious acts of members of such agencies toward each other. However, it appears that the federal courts continue to adhere to the view that the government is not liable under the federal tort claims procedure act for injuries to servicemen which arise out of or are in the course of activity incident to service. In *Harten v. Coons*, 502 F.2d 1363 (10th Cir. 1974), *cert. denied*, 420 U.S. 963 (1975), a serviceman and his wife brought an action under that act seeking to recover $50,000 for necessary costs of raising and maintaining a child, which the wife conceived and bore following a vasectomy operation performed upon the husband by military personnel. This was evidently not an injury contemplated under the federal statute providing compensation for injured servicemen. The 10th Circuit dismissed the action, citing *Feres v. United States, supra. See also* cases cited at 502 F.2d 1365 n.6 (10th Cir. 1974) and *Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975).

We need not decide at this time whether the legislature, in enacting RCW 4.92.090, intended to subject the State to liability for injuries inflicted upon a member of the

National Guard by another member of the guard, which are not compensated under RCW 38.40.030. The statute provides that the State shall be liable "for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." It is therefore incumbent upon a person asserting a claim against the State to show that the conduct complained of constitutes a tort which would be actionable if it were done by a private person in a private setting. This the plaintiff here has failed to do. Although he alleges that the conduct complained of constitutes outrage, the intentional infliction of emotional distress upon him and his wife, and the invasion of his privacy, he draws no analogy between the conduct complained of and any conduct of a private individual which would be actionable.

It may be that a person has a right to consult an attorney about his relations with his superiors and that any attempt on their part to dissuade him from doing so by means of threats constitutes a tort. But we are shown no case so holding. Nor are we shown any authority for the proposition that it is tortious for one's superiors to threaten punitive actions if their orders are not followed or to abuse their discretion in the assignment of duties.

Such acts if done by a private employer might conceivably violate contract provisions or some statute enacted for the protection of employees, but no such violation is claimed here. It is the general rule that in the absence of governing statutory or contractual provisions, the right to suspend an employee is absolute. *Yantsin v. Aberdeen,* 54 Wn.2d 787, 345 P.2d 178 (1959); *Halliburton v. Huntington,* 20 Wn. App. 91, 579 P.2d 379 (1978). The gist of the plaintiff's contention is that his superiors abused their discretion. We know of no principle of law which makes such abuse, in and of itself, tortious.

The wrongs of which the plaintiff complains are of the type for which some redress can be obtained within the

military structure,[2] or through a section 1983 suit against the persons who allegedly committed the acts, if indeed those acts denied to the plaintiff his civil rights.

The only remedy provided under state law for a member of the guard who believes himself wronged by his commanding officer is that of reporting the matter to a superior officer, who is required to forward the complaint to the Governor or Adjutant General. RCW 38.38.852. The section does not expressly require any of these persons to investigate the complaint or to provide relief for the complaining guardsman. Federal law affords a more satisfactory remedy. See 10 U.S.C. § 1552, providing a procedure for the correction of military records, and the assertion of claims incident thereto.

These procedures are available to guardsmen employed in the federally controlled and financed WANG program. Otherwise, their claims are cognizable by the courts only through the remedies provided by law for judicial review of administrative actions.[3] The extent to which courts will inquire into the factual basis for a given military decision is extremely limited. See 70 Mil. L. Rev. 1, 66–67 (1975). As that article and others cited point out, it appears the federal courts will review an alleged violation of a regulation only if that regulation was designed for the protection of individuals in the position of the person challenging it.[4]

---

[2]It appears from the plaintiff's allegations that his complaint to the Inspector General resulted in some action being taken in his behalf, but that an attempt to reinstate him in the nuclear weapons program was thwarted by federal regulations.

[3]See Olson v. National Guard, 160 Mont. 387, 503 P.2d 24 (1972). The Montana Supreme Court in that case refused to take jurisdiction of a suit by an officer of the Air National Guard seeking to have his transfer to the Air Reserve declared invalid, holding that because the regulations involved were those of the United States Air Force, and the statute a federal statute, no state law was involved and jurisdiction lay in the federal courts. In the case before us, we do not reach this question, inasmuch as the plaintiff is not seeking the remedy of judicial review.

[4]Colonel D. Peck, in his article The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975),

These limitations are imposed in proper recognition of the courts' lack of experience and expertise in making military judgments. The plaintiff's approach would have us nullify such limitations by permitting him to submit his case to a jury, which would not only be called upon to construe the regulations but also to review the facts to determine whether the plaintiff's superiors were justified in removing him from alert duty, an undertaking for which a jury's competence is surely no greater than that of a judge.

As we understand the plaintiff, he concedes that his suit is unprecedented but believes that the wrongs allegedly done him are ones for which the courts should create a damage action. However, we are here concerned with a state statute which we are not at liberty to extend beyond the intent expressed in the act. The statute was not designed to create new causes of action. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975). As we said in *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965), the statute does not render the State liable for every harm that may flow from governmental action, but only the harm which is the result of tortious misconduct. Abuse of discretion on the part of a supervisor, or his arbitrary and capricious conduct in the making of duty assignments, do not, insofar as we have been shown, fall into that category.

The judgment is affirmed.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied September 12, 1979.

---

concludes that there are four general categories of legal challenges to military administrative actions which are reviewable: lack of jurisdiction of the person, violation of statutory authority, violation of the military agency's own regulation (provided it is intended primarily for the plaintiff's protection and makes that protection mandatory), or violation of the constitution. In no case that has come to our attention have general damages, such as are claimed here, been awarded.