Eddie W. JACKSON

v.

STATE of Maine, et al.

Supreme Judicial Court of Maine.

Argued Jan. 20, 1988.
Decided June 30, 1988.

Harold L. Lichten (orally), Angoff, Gold-man, Manning, Pyle, Wanger, & Hiatt, P.C., Boston, Mass., Thomas S. Carey, Rumford, for plaintiff.

John E. Carnes, Maine Human Rights Com'n, Augusta, for amicus curiae.

James E. Tierney, Atty. Gen., James M. Bowie (orally), Asst. Atty. Gen., Philiop E. Johnson, Lynne Van Note (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for M.S.A.D. #9.

Before McKUSICK, C.J., and NICHOLS,* ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

The State of Maine, Department of Educational and Cultural Services (DECS) and

---

* Nichols, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

Department of State, Motor Vehicle Division (DMV), appeal from the summary judgment of the Superior Court, Kennebec County, in favor of Eddie W. Jackson's claim of discrimination in violation of the federal equal protection clause, actionable pursuant to 42 U.S.C. § 1983 (1981); the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794 (1985); and the public accommodation provisions of the Maine Human Rights Act, 5 M.R.S.A. § 4591–94B (1979 & Pamph. 1987). Defendant Maine School Administrative District No. 9 (MSAD No. 9) appeals from the summary judgment in favor of Jackson's claim that the district violated the employment discrimination provisions of the Maine Human Rights Act, 5 M.R.S.A. § 4572 (1979) and the denial of its cross-claim for contribution from the State. Jackson cross-appeals from the court's ruling that the State is not an employer for the purposes of liability pursuant to the employment discrimination provisions of the Maine Human Rights Act, 5 M.R.S.A. §§ 4571–75 (1979 & Pamph. 1987). We vacate the judgment against MSAD No. 9 and consequently need not address the district's cross-claim. We also vacate the grant of damages and injunctive relief against the State. We affirm the award of attorney fees.

## I. *Facts*

Jackson applied for a position with MSAD No. 9 as a school bus driver and custodian for a school in Weld. During his job interview, Jackson told the Director of Transportation for the district that he is an insulin-dependent diabetic. The director informed him that his controlled diabetes would not present a problem.

The district hired Jackson and Jackson began his custodial duties and the neces-

sary driver training. As required by 29 M.R.S.A. § 530(2)(C) (Supp.1987) and 29 M.R.S.A. § 2013(1)(E) (Supp.1987),[1] Jackson applied to the DMV, to take the examination necessary to receive a bus driver's endorsement. The application materials, which indicated that Jackson is an insulin-dependent diabetic, were forwarded to the DECS. The DECS notified the DMV that Jackson could not be approved as a school bus driver because of DECS Uniform School Bus Standards § 081.6, which required that school bus drivers meet certain minimum physical requirements, including "freedom from mental, nervous, organic or functional disease likely to interfere with safe driving, such as epilepsy, paralysis, insanity, diabetes, abnormal blood pressure, and heart ailments."[2]

The DECS regulation thus prevented the DMV from administering the examination to Jackson. Without the examination and endorsement, Jackson was not qualified to drive a school bus. Consequently, the district discharged Jackson. Jackson refused the district's offer of a full-time custodial position in Farmington, twenty-one miles from his home in Weld.

## II. *Procedure*

Jackson appealed the denial of his application to take the school bus driver's examination. After an evidentiary hearing, the hearing examiner upheld the decision denying Jackson's application. In Docket No. CV 86–124, Jackson filed a timely petition for judicial review of the examiner's decision in the Superior Court pursuant to M.R. Civ.P. 80C. Jackson alleged that the decision denying his application was arbitrary and capricious, and that the statute and regulations on which the Secretary of State

1. Section 530, subsection 2(C) provides, in relevant part,

    School buses ... shall not be given a separate class, but their use shall be provided for by special endorsement on their operator's license. This endorsement shall be made only after the applicant has successfully passed the examination designed for the specific vehicle....

    Section 2013(1)(E) provides,

    No person shall operate a school bus or a private school activity bus in the actual con-

veyance of school children until he shall have complied with the following requirements:

E. Must pass an examination as the Secretary of State shall prescribe to determine his ability to operate the specific vehicle which will be driven as a school bus or any comparable type vehicle.

2. 29 M.R.S.A. § 2013(1)(C) provides that no person shall operate a school bus who does not meet all special physical, mental and moral requirements established by the Commissioner, DECS.

based the denial illegally discriminate against diabetics as a class.

In Docket No. CV 86–270, Jackson filed a separate complaint in Superior Court for compensatory and injunctive relief. He named as defendants MSAD No. 9 and the State of Maine, through its two state agencies, DECS and DMV. In his complaint, Jackson alleged that both the State and the district violated his rights to equal protection and procedural due process,[3] and that the State had illegally discriminated against him in violation of the Rehabilitation Act. He sought compensatory and injunctive relief.

The court granted Jackson's motion to consolidate the Rule 80C petition and the plenary claim for statutory violations. Jackson was permitted to amend his complaint to include a claim against the State and the district for violation of the Maine Human Rights Act.[4]

The parties filed cross-motions for summary judgment on the liability issues. The court ruled that the State's denial of Jackson's application violated Jackson's right to equal protection, the Rehabilitation Act, and the public accommodations provision of the Maine Human Rights Act, 5 M.R.S.A. § 4591. The court found that the State was not Jackson's employer for purposes of the employment discrimination provisions of the Maine Human Rights Act, 5 M.R.S.A. § 4572. However, the court determined that the district, by discharging Jackson, had committed employment discrimination in violation of 5 M.R.S.A. § 4572.

After a trial on the issue of remedy, the court assessed damages, including an award for both past and future wage loss and attorney fees against the State. The court ordered the district to pay damages in the event that sovereign immunity barred the award against the State. The court ordered the State to administer the examination to Jackson, and the district to offer him the next available comparable job, providing he met all other conditions of employment.

On appeal, the State challenges the court's findings of liability for violation of the equal protection clause, the Rehabilitation Act, and the public accommodations provision of the Maine Human Rights Act. The district challenges the court's finding of liability for violation of the employment discrimination provisions of the Maine Human Rights Act and the denial of its cross-claim for contribution from the State. On his cross-appeal, Jackson challenges the court's determination that the State was not Jackson's employer for the purposes of the Maine Human Rights Act.

III.

■ Since July 1, 1976, state agencies have been prohibited by the Code of Fair Practices and Affirmative Action (Fair Practice Code), 5 M.R.S.A. §§ 781–791 (1979 & Supp.1987), from discriminating because of physical handicap "while providing any function or service to the public [or] in enforcing any regulation...." *Id.* at § 784(1). Under the Fair Practice Code the proscription against discriminatory action by state agencies because of a physical handicap is much broader in scope than the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4660 (1979 & Pamph. 1987). The latter act's proscription is limited to discrimination in employment, in housing, in access to public accommodations and, since 1987, in education. Because of the breadth of the Fair Practice Code, DECS regulation section 081.6, as enforced by DMV and at issue in this litigation, would be held invalid regardless of our resolution of the other issues raised on appeal. The regulation, which prohibits the operation of school buses by diabetics regardless of the ability of the individual with diabetes to operate safely school buses on Maine highways, effects

---

3. The Superior Court did not rule on Jackson's claim of denial of procedural due process and Jackson raises no issue in that regard on appeal.

4. Jackson had previously filed a complaint with the Maine Human Rights Commission. The

Commission found reasonable grounds to believe that unlawful discrimination based on physical handicap had occurred. 5 M.R.S.A. § 4612. The Commission appears in the Law Court as amicus curiae.

exactly the kind of discrimination the Legislature sought to prohibit under the Code. *See Maine Human Rights Comm'n v. Canadian Pacific Limited,* 458 A.2d 1225 (Me.1983) (interpreting Maine Human Rights Act prohibition against discrimination in employment based on physical handicap). Indeed, the court was informed prior to hearing on the summary judgment motions that DECS no longer precludes all insulin-dependent diabetics from operating school buses.

Our analysis suggests, therefore, that had Jackson sought prompt review of the DMV denial of his application to take the bus driver's license examination, by relying on section 784(1), he could have obtained a prompt reversal of the DMV decision. Instead, Jackson commenced the plenary action in CV 86–270 against the State and MSAD No. 9, asking the court to consolidate the actions. The court's order of February 2, 1987, expressly declines to address on the merits Jackson's 80C action in CV 86–124. For all that appears of record, CV 86–124 is still pending in the Superior Court, although MSAD No. 9 and Jackson advise us that Jackson now drives a school bus for MSAD No. 9.

IV.

Against this background, we first address the court's grant of summary judgment in favor of Jackson on his section 1983 claim based on denial of equal protection. The court found no rational basis for the regulation pursuant to which the State denied Jackson's application.

In order to prove that a statute or regulation violates equal protection by virtue of an illegal classification, the party challenging the classification must show "by clear and irrefutable evidence its arbitrariness and irrationally discriminatory nature." *Beaulieu v. City of Lewiston,* 440 A.2d 334, 338 (Me.1982). The law or regulation will be upheld if any *"conceivable* state of

facts" justifies the distinction. *Id.* (emphasis retained).

■ The State did not challenge Jackson's evidence that Jackson himself is physically capable of operating a school bus safely. The State contended, however, that some diabetics, as bus drivers, could present a risk to passengers. The State presented the Superior Court with medical literature that reflects the concern, embodied in the DECS regulation, for possible risks presented by diabetic drivers. The State clearly has an overwhelming interest in protecting the children transported to school on public school buses. It attempted to accomplish this goal in part by eliminating those persons who might present some risk. Available medical information supported placing diabetics in a potential risk category. The fact that the regulation was over-inclusive, eliminating physically capable diabetics as well as diabetics unsuited for the job, does not establish an equal protection violation. *See Beaulieu,* 440 A.2d at 339 (analyzing *Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970)). Jackson was not entitled to a determination that the classification has no rational basis.

V.

■ The Superior Court found the State to be in violation of the Maine Human Rights Act.[5] We conclude that the court erred in its decision that the ability to obtain a license and to operate on the public highway is within the right of access to public accommodation protected by the Maine Human Rights Act. An examination of the definition contained in 5 M.R.S.A. § 4553(8) (1979 & Pamph. 1987) reveals an obvious emphasis on some physical place or establishment offering goods, facilities or services to the general public. The Legislature defined a place of public accommodation as "any establishment which in fact caters to, or offers its goods, facilities or services to, or solicits or accepts patronage

---

5. The State challenges Jackson's use of the Maine Human Rights Act rather than the Administrative Procedures Act provisions for judicial review, 5 M.R.S.A. §§ 11001–11008 (1979 &

Pamph. 1987). The DECS regulation at issue would be subject to judicial review in any event. 5 M.R.S.A. § 8058(2) (1979).

from, the general public." It includes, but is not limited to, an extensive list of places such as inns, taverns, hotels, music halls, skating rinks, public libraries, public conveyances, public halls, and buildings occupied by two or more tenants. *Id.* Ordinarily, we would not consider a licensing, permitting or regulating function of government to be within that definition without a clear expression of such a legislative purpose. We are even less inclined to so extend the meaning when, as noted above in the discussion of the Fair Practice Code, the Legislature has provided a clear and specific prohibition against such discrimination.

■ For similar reasons, we hold that the State was not guilty of employment discrimination in violation of the fair employment provisions of the Maine Human Rights Act. We agree with the Human Rights Commission that the prohibition against employment discrimination is not limited to employers, 5 M.R.S.A. § 4572(1)(A), employment agencies, § 4572(1)(B), and labor organizations, section 4572(1)(C). Nevertheless, we conclude that the Legislature did not intend discrimination in state licensing or regulating to amount to employment discrimination. Such an interpretation of the statute would expose the state to liability under the Maine Human Rights Act for private employment wage loss without any clear indication of a legislative purpose to do so.

The Commission and Jackson argue for affirmance on the alternative ground of employment discrimination by citing a series of federal cases interpreting the Federal Civil Rights Act.[6] Federal trial court opinions have suggested that the term "employer" as used in Title VII includes "any party who significantly affects access of any individual to employment opportunities." *See, e.g., Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670 (D.Md. 1979); *Puntolillo v. New Hampshire Racing Comm'n,* 375 F.Supp. 1089 (D.N.H. 1974). These opinions involve an interpretation of the Court of Appeals opinion in *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973).

*Sibley* involved the discriminatory practices of a private hospital that controlled a private nurse's access to patients, and thus employment. The court held that, in view of Title VII reference to control of employment opportunity by labor organizations and employment agencies as well as by employers, the plaintiff in *Sibley* was not precluded from establishing that the hospital, although not technically his employer, nonetheless interfered with his opportunity for employment and thus came within the statute. *Id.* at 1340–42. *Sibley* is factually distinguishable from cases involving discrimination by virtue of a state's licensing or regulatory function. At least one court has criticized the *Puntolillo* Court for misconstruing *Sibley* by applying it to situations involving a state's licensing function. *NOW v. Waterfront Comm'n of New York Harbor,* 468 F.Supp. 317, 320–21 (S.D.N.Y. 1979). Regardless of the disputed federal interpretation of the Federal Civil Rights Act, and for the reasons stated above, we decline to expand the meaning of employment discrimination under the Maine Human Rights Act to the circumstances of this case.[7]

■ Because MSAD No. 9 was Jackson's employer, the court concluded that it was liable to Jackson for employment discrimination. At the same time the court found that the district and its officials were "en-

---

6. The employment discrimination provisions of the Maine Human Rights Act are meant to be the state counterpart of the Civil Rights Act of 1964. We thus can look to federal cases interpreting equivalent provisions of the federal Act for guidance in interpreting the Maine Human Rights Act. *Maine Human Rights Comm'n v. City of Auburn,* 408 A.2d 1253, 1261 (Me.1979); *Maine Human Rights Comm'n v. Local 1361, United Paperworkers International Union,* 383 A.2d 369, 375 (Me. 1978).

7. Federal law "suggests no more binding impact than does any citation of persuasive decisions from foreign jurisdictions." *Percy v. Allen,* 449 A.2d 337, 342 (Me.1982). Thus, while we look to federal law for guidance in determining whether the State has committed employment discrimination within the meaning of the MHRA, the Court must not abdicate its function of "conclusively resolving matters of purely state law." *Id.*

tirely blameless for the unfortunate chain of events that led to the loss of Mr. Jackson's job." The court's factual finding is inconsistent with its conclusion of liability. The district was precluded by virtue of 29 M.R.S.A. § 2013 from permitting Jackson to operate a school bus. We reject the court's attempt to retain MSAD No. 9 as a surrogate for the State.

■ We likewise reject the suggestion that the relief granted to Jackson can be affirmed on the ground that the Fair Practice Code incorporates all the remedies available under the Maine Human Rights Act. The Commission argues that the reference to Commission powers and duties contained in 5 M.R.S.A. § 789 (Supp.1987) expresses such a legislative intent. Literally read, section 789 extends the Commission's powers and duties only to affirmative action programs involving state employment opportunities.[8] We do not conclude that the literal interpretation leads to any absurd result. The Legislature might well have chosen to extend Commission enforcement to areas of equal opportunity in government employment without intending to confer similar powers in relation to other governmental action. We detect no indication that the private remedies of the Maine Human Rights Act are applicable to discrimination in "any function or service to the public" provided by any agency of the state in violation of section 784. Without more definite legislative direction, we conclude that relief in the instant case is limited to judicial review pursuant to the Administrative Procedure Act and Rule 80C.

## VI.

We next address the State's contention that the court improperly granted summary judgment for Jackson on his Rehabilitation Act claim. The Act provides, in pertinent part,

No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794.

In order to establish a prima facie case under the Rehabilitation Act, Jackson must show: 1) that he is a "handicapped individual" within the meaning of the Act; 2) that he is "otherwise qualified" for the school bus driver position; 3) that he was excluded from the position solely because of his diabetic condition; and 4) the program or activity from which he was excluded receives federal funds. *Strathie v. Dept. of Transportation*, 716 F.2d 227, 230 (3d Cir. 1983). The State does not dispute the fact that Jackson is a "handicapped individual" whose application was denied solely because of his insulin-controlled diabetes. The State does, however, challenge the court's findings that the DECS is a program or activity receiving federal funds, and that Jackson is "otherwise qualified" for the position as a bus driver.

■ Despite some confusion in the record as to the use by DECS of federal funds and even greater confusion as to the applicable federal law, we conclude that the court correctly determined that there was no genuine issue of material fact on the question of funding. The State contends that for liability to attach under the Rehabilitation Act, Jackson must establish that the discrimination occurred under a specific program that receives federal funds. We agree. We note the uncertainty as to just how specific the funding must be. *See, e.g., Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635–36, 104 S.Ct. 1248, 1255,

---

**8.** Section 789 provides,

All affirmative action programs, whether part of the civil service or not, shall be subject to the review and comment of the Human Rights Commission.

All powers and duties granted to the Maine Human Rights Commission under sections

4551, et. seq., as amended, apply to this section. Complaints of discrimination based on race, color, religious creed, sex, national origin, age, physical handicap or mental handicap should be made to the Maine Human Rights Commission.

79 L.Ed.2d 568 (1984); *Disabled in Action v. Mayor & City Council of Baltimore,* 685 F.2d 881, 884–85 (4th Cir.1982); *Brown v. Sibley,* 650 F.2d 760, 767–70 (5th Cir. 1981). The facts in this case, however, fall well within any measure of specificity.

■ The parties have generated much evidence about, and focused much of their arguments on, aspects of state[a] and local (school district) funding that are totally irrelevant. In this regard, we are not concerned with the DMV licensing of bus drivers or with the MSAD No. 9 purchase or operation of school buses. The act of discrimination proscribed by the Rehabilitation Act consists of the inclusion of a requirement that school bus drivers be "free from ... diabetes" in section 081.6(C)(3) of the Uniform School Bus Standards. Enforcement of that requirement falls within the distinct Division of Transportation of the DECS under the supervision of Associate Commissioner William F. Pagnano. Pagnano testified that the Transportation Division received approximately $9,000 annually of federal funds for bus driver training. Contrary to the State's contention, those federal funds were not insulated by virtue of the fact that they were originally received by the Maine Highway Safety Committee. Cases on which the State relies are distinguishable.[9] We conclude that the federal funds received for bus driver training were sufficient to trigger the application of section 504 to the discriminatory aspect of the bus driver qualification regulations.

■ Moreover, we conclude that there is no merit in the State's contention that Jackson has not demonstrated that he is "otherwise qualified." The denial of Jackson's application was automatic and based solely on his diabetes. Jackson established that he had never missed work or been hospitalized because of his condition. The doctor who examined Jackson concluded that Jackson was free from any condition that might affect his ability to safely operate a school bus. The State offered no evidence that Jackson personally could not operate a school bus safely. As we stated above, Jackson is now employed by MSAD No. 9 as a bus driver.

■ The remedy available to Jackson for the State's violation of the Rehabilitation Act presents a most difficult question. In *Thiboutot v. State,* 405 A.2d 230, 236–37 (Me.1979) *aff'd.,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), we examined the question of the State's sovereign immunity under 42 U.S.C. § 1983. We stated "[t]hough the question is not free from doubt, it is our conclusion that, in the absence of waiver by the state of its sovereign immunity, the state may constitutionally interpose that immunity as a bar...." *Id.* at 237 (relying on *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). We recognized that *Edelman* and *Quern* involved the Court's interpretation of the states' immunity from suit in federal courts under the Eleventh Amendment and that *Quern* may have been based on the meaning of the word "person" in section 1983. *Thiboutot,* 405 A.2d at 236. *See Smith v. Dept. of Public Health,* 428 Mich. 540, 410 N.W.2d 749, 754–70 (1987); *Edgar v. State,* 92 Wash.2d 217, 595 P.2d 534 (1979); *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980). For reasons similar to those expressed in *Thiboutot,* and still without conviction that this federal issue has been finally resolved, we conclude that the State may constitutionally interpose its sovereign immunity in state court as a bar to an award of damages under section 504 of the Rehabilitation Act. In *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) the Supreme Court resolved a con-

---

**9.** Generally, the cases cited by the State hold that a program which *indirectly* benefits because of a different program's or activity's receipt of federal funds does not come within the Rehabilitation Act. *See, e.g., U.S. Dept. of Transp. v. Paralyzed Veterans,* 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986) (airport's receipt of federal funds does not subject airline using airport to Rehabilitation Act); *Disabled in Action v. Mayor & City Council of Baltimore,* 685 F.2d 881, 884–85 (4th Cir.1982) (baseball club's benefit from federal subsidy of stadium does not subject it to Rehabilitation Act).

 

flict among the circuits by concluding that states and state agencies are not subject to suit *in federal court* for retroactive monetary relief under section 504 of the Rehabilitation Act. The Court's analysis was consistent with and relied in part upon *Edelman* and *Quern. Atascadero*, 473 U.S. at 243–47, 105 S.Ct. at 3147–49. We see no reason to depart from the conclusion we reached as to section 1983 in our *Thiboutot* decision.[10] We likewise find no merit in the trial court's novel theory that the "just compensation" clause of our constitution, Me. Const., art. I, § 21, justifies its award of damages against the State. Neither case cited by the court supports its conclusion.

■ The injunctive relief granted by the court is available only against the Secretary of State or the Commissioner of DECS and not against the State of Maine. No issue has been raised on appeal, however, concerning the absence of those officials as parties and no useful purpose would be served by permitting amendment because, as we stated, Jackson has obtained his job as a result of the injunction. We conclude, however, that such relief was necessary because the State's attorney resisted any concession of error even after DECS liberalized its policy on diabetics. The injunction provided Jackson part of the relief that he sought and accomplished its purpose of securing to Jackson the opportunity he had been denied. Jackson's success in obtaining injunctive relief under section 504 authorizes the award of attorney fees under the Act.[11] The amount of the fees awarded were within the sound exercise of judicial discretion. *See Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 884 (Me.1984).

The entry is:

Judgment against MSAD No. 9 vacated.

Judgment against the State of Maine vacated as it relates to damages and injunctive relief, affirmed as it relates to attorney fees.

All concurring.

---

10. The code was amended in 1986 to allow suits against states in federal court for violations of the Rehabilitation Act. 42 U.S.C. 2000d–7(a)(1) (Supp.1988). It is by no means clear that the amendment abrogates sovereign immunity in state courts. In any event, the amendment applies only to Rehabilitation Act violations occurring after October 21, 1986, and thus has no effect on the instant case. 42 U.S.C. § 2000d–7(b) (Supp.1988).

11. Rehabilitation Act of 1973, 505, 29 U.S.C. § 794a(b) (1985) provides:

   In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.