Norman DAVIS

v.

**SECRETARY OF STATE, DIVISION
OF MOTOR VEHICLES.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 7, 1990.
Decided July 3, 1990.

Edward G. Dardis, Howard & Bowie, Damariscotta, for plaintiff.

James E. Tierney, Atty. Gen. and Stephen Dassatti, Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

GLASSMAN, Justice.

Norman Davis appeals the judgment of the Superior Court (Lincoln County, *Bradford, J.*) affirming the decision of the Secretary of State, Division of Motor Vehicles (the "Secretary"), suspending Davis's driver's license pursuant to 29 M.R.S.A. § 2241(1)(D) (Pamph.1988).[1] The Secretary

---

1. 29 M.R.S.A. § 2241(1)(D) (Pamph.1988) provides:

1. The Secretary of State ... may suspend or revoke ... any license issued to any person

found Davis suffered from an "adverse medical condition" and suspended his license on that basis. Davis contends that because his license was suspended based on his status as an alcoholic and because the Functional Abilities Profiles (the "Profiles")[2] contained undefined terms he was deprived of the equal protection and due process rights guaranteed by the United States and Maine Constitutions. We find no merit in these contentions and affirm the judgment of the Superior Court.

Our review of the record discloses the following. On August 31, 1988, Norman Davis consulted Thomas Reeder, a specialist in internal medicine, complaining of chest pains and numbness and tingling in his feet. Reeder noticed that Davis smelled of alcohol. Davis advised Reeder that he had been previously arrested for driving under the influence of alcohol but had substantially modified his alcohol consumption since that time. In the course of ordering and administering various laboratory tests, Reeder ordered a blood-alcohol test which revealed that Davis had a blood-alcohol content of .17 percent. On September 14, 1988, when Davis returned to Reeder's office for a scheduled appointment, Reeder again noticed alcohol on Davis's breath. He told Davis the results of the blood-alcohol test taken during the previous visit and reported that the other laboratory tests indicated that Davis had hypertension, peripheral neuropathy, liver function abnormalities, hypoglycemia and hypocholesterolemia, all secondary to alcoholism, and recommended he immediately receive treatment for these conditions. He advised Davis of his intention to report his medical findings to the Secretary.[3] After

receipt of Reeder's report, the Secretary suspended Davis's driver's license for an indefinite period because of Davis's "adverse medical condition."

At a hearing to review Davis's license suspension, Davis and Reeder testified and Davis submitted the Driver Medical Evaluations filled out by two doctors, Karen Ottenstein and Robert Stein. On the Driver Medical Evaluation form, Ottenstein checked off a box indicating that Davis's license should be unrestricted but made no further comments. Stein made no recommendations regarding the suspension or restriction of Davis's license but made the following comments: "I saw Mr. Davis only once for evaluation of his peripheral neuropathy. His neuropathy would not interfere with his ability to operate a motor vehicle." Davis also submitted the medical report of Stein stating that Davis suffered from, *inter alia*, distal symmetric polyneuropathy, hypertension, congestive heart failure, alcohol use, glucose intolerance, and diabetes mellitus. It was also stated in the report that Stein had strongly urged Davis to seek medical care and that "[Davis] needs desperate control of his blood pressure. He is at high risk for further heart disease and stroke. His blood pressure is out of control. He is clearly having nocturnal symptoms of congestive heart failure." Although Stein found Davis physically capable of driving a motor vehicle, he stated that he "[did] not feel capable to assess Mr. Davis'[s] alcohol consumption and its impact on his motor vehicle license."

The hearing examiner found that: (1) Davis's health problems and impairments

---

to operate a motor vehicle or right to operate a motor vehicle ... after hearing for any cause which he deems sufficient. He is also authorized to suspend or revoke ... any license ... issued to any person without preliminary hearing upon showing by his records or other sufficient evidence that the driver:

    **D.** Is incompetent to drive a motor vehicle.

**2.** 29 M.R.S.A. § 547 (Supp.1989) provides for the establishment of a Medical Advisory Board and for the promulgation of regulations to establish guidelines defining what constitutes an adverse medical condition. Pursuant to section

547, the Secretary has promulgated "Functional Ability Profiles" as guidelines for assessing the competence of a person to operate a motor vehicle.

**3.** 29 M.R.S.A. § 547(3) (Supp.1989) provides in pertinent part:

    Any physician ... who becomes aware of a physical, mental or emotional impairment which appears to present an imminent threat to driving safety and reports this information to the office of the Secretary of State ... in good faith shall have immunity for any damages claimed as a result of so doing.

were clearly defined by the medical evidence; (2) several of Davis's health problems were active, were not under medical control and could not be controlled except by medication, diet and abstinence from alcohol; (3) control of these health problems was necessary to ensure Davis's safe operation of a motor vehicle; and (4) based on the Profiles, Davis was presently incompetent to drive a motor vehicle. Accordingly, the hearing examiner upheld the suspension of Davis's license until Davis, *inter alia*, produced a favorable medical report from a physician familiar with his medical history and showed he had successfully completed an alcohol counseling program approved by the Department of Human Services. Pursuant to M.R.Civ.P. 80C, Davis sought a review of this decision by the Superior Court. After a non-evidentiary hearing and the submission of briefs, the court affirmed the decision of the hearing examiner and Davis appeals.

■ Davis first contends that his license was suspended solely because of the hearing examiner's conclusion that Davis was presently an alcoholic. We disagree. Under the Maine Administrative Procedure Act, 5 M.R.S.A. § 11007(4)(C)(5) (1989), an administrative agency's findings of fact may be overturned only upon a showing by the party challenging them that they are "unsupported by substantial evidence on the whole record." *Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1207 (Me.1982). This standard of review is identical to the "clear error" standard used to review a trial court's factual findings. *Id.* at 1207–08. Inconsistent evidence in the record and the possibility that different conclusions could be drawn therefrom does not prevent the agency's findings from being sustained if there is substantial evidence to support them. *Seven Islands Land Co. v. Maine Land Use Reg.*

*Comm'n*, 450 A.2d 475, 479 (Me.1982). The reviewing court will not substitute its judgment for the agency's where there may be a reasonable difference of opinion. *Id.*

The record before us clearly contradicts Davis's characterization of the proceedings and the examiner's decision. The hearing examiner determined that Davis suffered from numerous adverse medical conditions, only one of which was alcoholism, that interfered with his ability to safely operate a motor vehicle.[4] The record contains substantial evidence supporting the findings on which the hearing examiner based his decision. We, therefore, find no merit in Davis's first argument.

■ Davis next challenges the Secretary's suspension of his license on the ground that it violates the equal protection clauses of the United States and Maine Constitutions. Starting from the erroneous premise that his license was suspended because of his status as an alcoholic and not because of an adverse medical condition preventing his safe operation of a motor vehicle, Davis argues that a classification based on alcoholism has no rational basis and furthers no legitimate governmental aim and thus violates his right to equal protection. *See Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Lambert v. Wentworth*, 423 A.2d 527, 531 (Me.1980). The Profiles do not draw a distinction between alcoholics and nonalcoholics for the purpose of evaluating a license suspension, nor did the hearing examiner draw such a distinction in the instant case. Accordingly, Davis fails to surmount the threshold requirement of establishing his membership in a class, suspect or otherwise, that has been denied equal protection under the laws.[5]

---

4. The hearing examiner found that Davis suffered from hypertension, obesity, smoking, diabetes, peripheral neuropathy, congestive heart failure, liver function abnormalities, hypoglycemia, hypocholesterolemia and alcoholism.

5. The instant case is distinguishable from *Jackson v. State*, 544 A.2d 291 (Me.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3185, 105 L.Ed.2d

694 (1989), in which the plaintiff's status as an insulin dependent diabetic automatically disqualified him from obtaining employment as a school bus driver. Nevertheless, in *Jackson*, we found the State had a rational basis for the classification and held there was no equal protection violation. *Jackson*, 544 A.2d at 295. Here, as in *Jackson*, Davis has not claimed a violation of the Code of Fair Practices and Af-

 

Davis finally contends that the Profiles are unconstitutionally vague because they contain undefined terms. We note that the Profiles are merely nonexhaustive guidelines that assist treating physicians in the reporting of conditions to the Secretary and that assist the Secretary's determination of an individual's competence to drive a motor vehicle. The standard for determining if a regulation is unconstitutionally vague is whether a person of ordinary intelligence could reasonably understand what conduct is prohibited by the regulation. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); *State v. Parker*, 372 A.2d 570, 573 (Me.1977). The party challenging the regulation bears the heavy burden of overcoming its presumption of constitutionality. *State v. Cropley*, 544 A.2d 302, 304 (Me.1988); *State v. Sylvain*, 344 A.2d 407, 408 (Me.1975). We have stated in the context of a criminal statute that "[w]hen a statute on its face is flexible and broad in its terminology ... it gives a potential defendant notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct." *State v. Davenport*, 326 A.2d 1, 6 (Me.1974) (citing *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). Our willingness to uphold the constitutionality of generalized and abstract terms that lend themselves to a precise application in a criminal statute prompts the conclusion that in reviewing mere regulatory guidelines, mathematical certainty in defining the terms of those guidelines is not required. Here, each of the terms in the Profiles of which Davis complains is susceptible to a reasonable construction by a person of ordinary intelligence. *See State v. Thibodeau*, 520 A.2d 708, 709 (Me.1987). Accordingly, Davis's due process challenge based on the claimed vagueness of those terms must also fail.

firmative Action (Fair Practice Code), 5 M.R.S.A. § 781–791 (1989). *See also Beaulieu v. City of Lewiston,* 440 A.2d 334 (Me.1982) (ordinance that distinguishes between renters and home-

The entry is:

Judgment affirmed.

All concurring.

owners in determining mortgage payment assistance has a rational basis and does not deny equal protection).